UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.   00-6309-CR-SEITZ/GARBER(S)(S)

**NIGHT BOX
FILED**

MAR 1 3 2002

CLARENCE MADDOX
CLERK, USDC / SDFL / MIA

UNITED STATES OF AMERICA,

                    Plaintiff,

v.

FRED MORGENSTERN,

                    Defendant.

_____

SUPPLEMENT TO GOVERNMENT'S MOTION TO
REVOKE BOND OF DEFENDANT FRED MORGENSTERN

The United States of America, through its undersigned Assistant United States Attorneys, respectfully files a Supplement to Government's Motion to Revoke Bond of Defendant Fred Morgenstern, and in support thereof states as follows:

1.   On February 6, 2002, the government filed a Motion to Revoke Bond of Defendant Fred Morgenstern on the basis that the defendant failed to appear at a Show Cause Hearing before United States District Judge G. Ross Anderson, Jr., in the United States District Court in South Carolina on January 31, 2002.

2.   As a result of defendant's failure to appear on January 31, 2002, United States District Judge G. Ross Anderson, Jr., issued an arrest warrant ordering the immediate arrest of the defendant for criminal contempt.

3.    On February 1, 2002, the defendant was arrested in the Southern District of Florida and ordered returned to the District of South Carolina.

4.    On February 28, 2002, the Court in the District of South Carolina conducted a hearing relating to defendant's failure to appear at the January 31, 2002, Show Cause Hearing.  The government presented evidence showing that the defendant was guilty beyond a reasonable doubt of violating Title 18, United States Code, Section 401.  The defendant presented evidence that his failure to appear was not willful.  The Court ultimately found that the defendant was guilty, and on March 5, 2002, the Court sentenced the defendant to thirty-five days incarceration for criminal contempt of Court.  A copy of the Court's March 7, 2002, Order of Criminal Contempt is attached as Exhibit 1.

5.    Also, on March 5, 2002, the Court heard further evidence relating to the civil contempt show cause proceeding, which had initially been scheduled for January 31, 2002.  At the hearing, the government demonstrated to the Court that the defendant who was subject to the Court's Restraining Order as of January 10, 2002, maintained control of certain funds belonging to victims of the Chemical Trust fraud and, thus, was in violation of the Court's Order in failing to disgorge those funds.

6.    On March 7, 2002, the Court then entered an Order finding the defendant in civil contempt for disobeying the Court's

2

Restraining Orders. Specifically, the defendant was ordered to be incarcerated until he purges the civil contempt by "1) repatriating and disgorging to the Receiver the $2.8 million transferred on or about October 7 and 15, 1999 from Americas International Bank Corp., Nassau Bahamas, to the 'Slattocks Invest, S.A.' account #21444 at Canadian Imperial Bank of Commerce (Switz.), Ltd., wherever those funds may currently be; 2) by disgorging to the court-appointed Receiver $27,975 transferred from said Slattocks account on or about August 23, 2000 in payment on his American Express card bill; and 3) by disgorging to the court-appointed Receiver $16,785 transferred from Americas International Bank Corp., Inc., Nassau, Bahamas, in payment on his American Express card bill." A copy of the Court's March 7, 2002, Civil Contempt Order is attached as Exhibit 2.

7.    The government submits that defendant's bond in this case should be revoked based upon the fact that he has been convicted of criminal contempt and also has been found in civil contempt for violating the Restraining Orders of the United States District Court in South Carolina. The defendant is presently in custody pending compliance with the Court's Order as set forth in paragraph 6, above.

Accordingly, pursuant to Title 18, United States Code, Section 3148, defendant's bond in this case should be revoked and the defendant should be detained pending trial.

Respectfully submitted,

GUY E. LEWIS
UNITED STATES ATTORNEY

By: _____
J. BRIAN McCORMICK
ASSISTANT UNITED STATES ATTORNEY
Court I.D. #A5500084
500 East Broward Blvd., Suite 700
Fort Lauderdale, FL 33394
Telephone: (954) 356-7392
Fax: (954) 356-7230

By: _____
DIANA L.W. FERNANDEZ
ASSISTANT UNITED STATES ATTORNEY
Court I.D. #A5500017
500 East Broward Blvd., Suite 700
Fort Lauderdale, FL 33394
Telephone: (954) 356-7392
Fax: (954) 356-7230

4

<u>CERTIFICATE OF SERVICE</u>

I HEREBY certify that a true and correct copy of the foregoing was mailed this _13th_ day of _March_, 2002 to:

William Norris, Esq.
7685 S.W. 104th Street, Suite 220
Offices of Pinecrest II
Miami, FL 33156
(Counsel for Fred Morgenstern)

Scott William Sakin, Esq.
1411 NW North River Drive
Miami, FL 33125
(Counsel for David Morgenstern)

Emmanuel Perez, Esq.
2121 Ponce de Leon Blvd., Ste. 920
Coral Gables, FL 33135-5222
(Counsel for Joseph Silvestri)

J. BRIAN McCORMICK
ASSISTANT UNITED STATES ATTORNEY



# Exhibit 1

THE DISTRICT COURT OF THE UNITED STATES
FOR THE DISTRICT OF SOUTH CAROLINA
GREENVILLE DIVISION

**FILED**

MAR – 7 2002

*LARRY W. PROPES, CLERK*
*U. S. DISTRICT COURT*

United States of America
v.
Virgil Womack, et al.

)
)
)
)
)

United States of America
v.
Alliance Trust, a.k.a. Alliance T, Inc.,
a.k.a. AT, Inc., Chemical Trust, Cardinal
Trust, a.k.a. Cardinal T, Inc., Carver
trust, a.k.a. Carver T, Inc., Continental
Trust, Hampton Trust, Heart-Land Trust,
Hersheys Trust, Three Rivers Trust,
a.k.a. TRT, Inc., Merrit Pierce Trust,
a.k.a. MPT, Inc., United Marketing Trust,
a.k.a. UMT, Inc., U.S. Guarantee Corp.,
Gold Coast Check Cashing, Inc., Virgil W.
Womack, George H. Williamson, Sr.,
Charlotte Womack, Clifton Wilkinson,
Fred Morgenstern, Lewey L. Cato, III,
Alvin A. Tang, and Joseph R. Silvestri,

                Defendants

Prestige Accounting Services, Inc.,
ACC Capital Consultants, Inc., The Falcon
Trust Company, Ltd., America's Fidelity
Assurance Company, Ltd.,
New Millennium Management,
Manufacturers Fidelity and Guaranty
Company, Ltd., America's Resource
Corp., MICA Securities, Inc., MICA
Enterprises, Inc., U.C.B.M. (Bahamas),
Ltd., Triple W. Builders, Inc., Merrit
Advisors Group, Inc., Adbank Companies,
Inc., First Capital Acceptance Corp.,
Intercontinental Capital Management, Ltd.,
JRAM, Allan J. Clarke, Americas Fidelity
Capital Management, Ltd., Americas
International Bank Corp., Ltd., Standard
Atlantic, Inc., FTS Entities, Ltd., Risk
Management Group, Ltd. Bruce Forrester,
Nelson Jarnagin, James Morgenstern, and
David Morgenstern, Slattocks Invest, S.A.,
International T. Consulting, Ltd., Commercial
Holdings, and Victoria Morgenstern,

            Relief Defendants.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

CRIMINAL NO.: 8: 00-27
CIVIL NO.:    6:00-236-13

**ORDER OF
CRIMINAL CONTEMPT**



*SRS*
①

(316)

This matter comes before the Court pursuant to Title 18, United States Code, Secton 401(3) and Rule 42(b) of the Federal Rules of Criminal Procedure, and arises out of Defendant Fred E. Morgenstern's failure to appear before this Court on January 31, 2002. On February 28, 2002 the Defendant appeared before this Court to answer to the charge of criminal contempt for such failure to appear. In light of the evidence presented by the Government and the Defendant, who is represented by Robert Wilson, Esq., and otherwise in consideration of the record, the Court finds Defendant Fred E. Morgenstern in criminal contempt of this Court, and makes the following findings:

1.    On January 14, 2002, the Court issued an Order and Rule to Show Cause requiring the Defendant to appear in person and show cause before this Court at 10:00 a.m. on January 31, 2002 why the United States' and Receiver's Motion for a Show Cause Hearing for Civil Contempt and other relief should not be granted. The Motion requested, inter alia, that the Court hold the Defendant in civil contempt for failing to abide by the court's orders issued pursuant to Title 18, United States Code, Section 982, incorporating Title 18, United States Code, Section 853(e), in the matter of United States v. Virgil Womack et al., Criminal No. 8:00-27, and United States v. Alliance Trust, Chemical Trust, et al., Civil No. 6:00-236-13.[1]

---

[1] Beginning in January, 2000, Defendant was ordered to refrain from transferring and alienating certain "Chemical Trust" investor funds which were fraudulently obtained by Virgil Womack and transferred to accounts maintained by Fred e. Morgenstern and other individuals and corporate entities. Defendant was further ordered to repatriate all such funds held in overseas bank accounts.

2.      On January 31, 2002, the Defendant failed to appear before this Court. The Court accepted into evidence an Affidavit executed by Patrick Brodsky, Special Agent for the U.S. Federal Bureau of Investigation, and Ronnald E. Wise, special Agent for the U.S. Internal Revenue Service, stating that the Defendant was personally served on January 18, 2002 with a copy of the Court's Order and Rule to Show Cause.

3.      At that hearing, Defendant's counsel, Robert Wilson, Esq., represented to the Court that the Defendant had purchased airline tickets and had made an attempt to travel to Anderson, South Carolina on January 30, 2002. However, the Defendant decided at the last moment not to board the airplane for South Carolina because he was subject to certain conditions of bond restricting his travel arising of the case of United States v. Fred E. Morgenstern, Case No. 00-63-09-CR-SEITZ, S.D. Fla., in which the Defendant is charged with various racketeering and money laundering offenses. Counsel for the Defendant further submitted into evidence a letter form the Defendant explaining the attempts he had made the previous day in attempting to attend the January 31 hearing, and submitted copies of airline tickets that he had purchased.

4.      On January 31, 2002, the court issued a Warrant for Arrest for the Defendant, requiring him to answer to the Court on the charge of contempt for his failure to appear.

5.      The Court takes judicial notice that the Defendant was arrested on

3

February 1, 2002 in the southern District of Florida, and was brought before a U.S. Magistrate Judge of that District in West Palm Beach, Florida. Defendant was afforded a bond hearing, and was ordered detained by the U.S. Magistrate Judge. Thereafter, Defendant was transported to Anderson, South Carolina and first brought before this Court on February 28, 2002.

6.     The Court finds that the Defendant was afforded sufficient notice of the charge and was afforded sufficient opportunity to defend the charge. Notice of a charge of criminal contempt may be initiated by way of an order of arrest. F. R. Crim. P. 42(b). The Defendant was represented by counsel in the matter as of January 31, 2002, was promptly arrested on the charge and brought before a U.S. District Magistrate in Florida. On February 28, 2002, the Defendant indicated to this Court his intention and readiness to proceed that day on the charge.

7.     On February 28, 2002, the Defendant and the United States stipulated that the Defendant had been personally served with a copy of this Court's Order and Rule to Show Cause on January 18, 2002 and accordingly was aware of the requirement that he appear before this Court on January 31, 2002.

8.     The Defendant submitted evidence alleging that his failure to appear in Court on January 31 was not willful and should be excused. In summary, the Defendant testified that his failure to appear was the result of his last-minute decision to abide by the outstanding order of U.S. District Court Judge Seitz in the Defendant's criminal case in Florida, which required him to obtain advance



(4)

permission to travel outside the Southern District of Florida as a condition of his bond. He stated that about the time he had been served with a copy of the Order, he was preoccupied with attending to the needs of his brother, David Morgenstern, who apparently had been hospitalized in mid-January. The Defendant further testified that he had discussed this Court's Order with his attorneys in Florida and was aware that a request for a continuance of the January 31 hearing had been made to this Court and denied. The Defendant testified, however, that his criminal attorney who had recently replaced the Defendant's previous court-appointed attorney was unaware of the Defendant's conditions of bond restricting his travel.

9.    On cross-examination, the United States presented evidence that just several days after the Defendant had been served with this Court's order, the Defendant filed a motion with Judge Seitz in Florida to allow him to travel outside of that district to Cocoa Beach, Florida for business purposes. A copy of that motion to travel was admitted into evidence by this Court. The Defendant further acknowledged that over the past year, he in fact had filed a number of similar motions to travel with Judge Seitz, requesting permission to travel outside the District for vacations, business trips and indeed to testify before this Court on a motion filed by the Defendant to release funds.

10.    In order to establish the offense of criminal contempt under Title 18, United States Code, Section 401(3), the government must prove: 1) that the court entered a lawful order or decree; 2) the order was "definite, clear, specific, and left



5

no doubt or uncertainty in the minds of those to whom it was addressed," and 3) in doing so, the defendant acted "willfully, contumaciously, intentionally, (and) with a wrongful state of mind." Ashcroft v. Conoco, 218 F.3d 288, 295 (4th Cir. 2000), citing United States v. McMahon, 104 F.3d 638, 642 (4th Cir. 1997)(quoting Richmond Black Police Officers Ass'n v. City of Richmond, 548 F.2d 123, 129 (4th Cir. 1977). See also United States v. Bernardine, 237 F.3d 1279, 1281 (11th Cir. 2001). The government must demonstrate a lawful and reasonably specific order and the willful violation of that order. Bernardine, 237 F.3d at 1281.

11.    The government has proven beyond a reasonable doubt that the Defendant violated Title 18, United States Code, Section 401(3). The Court finds that the Order and rule to Show Cause was lawful and specific in notifying the defendant that he must appear before this Court on a specific date, at a specific time and location. The Defendant was timely served with a copy of that Order, and failed to appear in violation of that Order.   The Court further finds that the Defendant was well aware of the procedures for filing motions to travel with the U.S. District Court in Florida, given that he had made a number of such requests since his arrest in Florida in his criminal case there.   The Court finds that th Defendant was not credible when he asserted that his new court-appointed attorney was unaware of his conditions of bond, given that the Defendant requested him to file such a motion for a reason other than to come to Anderson.   Accordingly, the court rejects Defendant's explanation for his failure to appear, and finds that the



6

Defendant willfully disobeyed this Court's Order. The Defendant is guilty of criminal contempt.

12.    Defendant has been incarcerated on this charge from February 1, 2002 to March 7, 2002, a period of 35 days. Defendant is sentenced to a period of 35 days incarceration, and shall be given credit for time served.

13.    The Clerk of the court is directed to prepared a judgment consistent with this Order.

IT IS SO ORDERED.

G. ROSS ANDERSON, JR.
UNITED STATES DISTRICT JUDGE

March ___, 2002
Anderson, South Carolina

## NOTICE OF RIGHT TO APPEAL

Plaintiff has the right to appeal this Order within sixty (60) days from the date hereof, pursuant to Rules 3 and 4 of the Federal Rules of Appellate Procedure. Failure to meet this deadline, as modified by Rule 4 of the Federal Rules of Appellate Procedure, will waive the right to appeal.

# Exhibit 2

THE DISTRICT COURT OF THE UNITED STATES
FOR THE DISTRICT OF SOUTH CAROLINA
GREENVILLE DIVISION

United States of America

v.

Virgil Womack, et al.

)
)
)
)
)
)
)
)

CRIMINAL NO.: 8: 00-27

ORIGINAL FILED

MAR 0 7 2002

LARRY W. PROPES, CLERK
U. S. DISTRICT COURT
CIVIL NO.:    6:00-236-13

United States of America

v.

Alliance Trust, a.k.a. Alliance T, Inc.,
a.k.a. AT, Inc., Chemical Trust, Cardinal
Trust, a.k.a. Cardinal T, Inc., Carver
trust, a.k.a. Carver T, Inc., Continental
Trust, Hampton Trust, Heart-Land Trust,
Hersheys Trust, Three Rivers Trust,
a.k.a. TRT, Inc., Merrit Pierce Trust,
a.k.a. MPT, Inc., United Marketing Trust,
a.k.a. UMT, Inc., U.S. Guarantee Corp.,
Gold Coast Check Cashing, Inc., Virgil W.
Womack, George H. Williamson, Sr.,
Charlotte Womack, Clifton Wilkinson,
Fred Morgenstern, Lewey L. Cato, III,
Alvin A. Tang, and Joseph R. Silvestri,

Defendants

Prestige Accounting Services, Inc.,
ACC Capital Consultants, Inc., The Falcon
Trust Company, Ltd., America's Fidelity
Assurance Company, Ltd.,
New Millennium Management,
Manufacturers Fidelity and Guaranty
Company, Ltd., America's Resource
Corp., MICA Securities, Inc., MICA
Enterprises, Inc., U.C.B.M. (Bahamas),
Ltd., Triple W. Builders, Inc., Merrit
Advisors Group, Inc., Adbank Companies,
Inc., First Capital Acceptance Corp.,
Intercontinental Capital Management, Ltd.,
JRAM, Allan J. Clarke, Americas Fidelity
Capital Management, Ltd., Americas
International Bank Corp., Ltd., Standard
Atlantic, Inc., FTS Entities, Ltd., Risk
Management Group, Ltd. Bruce Forrester,
Nelson Jarnagin, James Morgenstern, and
David Morgenstern, Slattocks Invest, S.A.,
International T. Consulting, Ltd., Commercial
Holdings, and Victoria Morgenstern,

Relief Defendants.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

ORDER OF
CIVIL CONTEMPT



This matter comes before the Court upon the joint motion by the United States of America and the Court-appointed Receiver for an order finding Defendant Fred E. Morgenstern in civil contempt of this Court's previous orders regarding "Chemical Trust/Alliance Trust" investor funds identified in the case of <u>United States v. Virgil Womack et al.</u>, for failing to repatriate such funds from overseas accounts and by converting such funds to his own personal use, in violation of such orders. A hearing was conducted on January 31, 2002 by this Court, at which time the Receiver presented evidence on the Motion. Because of the defendant's failure to appear at that hearing (at which his attorney, Robert Wilson, Esq. was present), the matter was continued to February 28, 2002, March 4 and March 5, 2002, at which time the Government and the Defendant presented further evidence.[1] In light of the evidence presented by the United States, the Receiver and the Defendant, and otherwise in consideration of the record, the Court finds Defendant Fred E. Morgenstern in civil contempt of this Court's previous orders, and makes the following findings:

## FACTUAL FINDINGS

1.      Beginning on January 11, 2000, this Court issued a series of temporary

---

[1] The Court takes judicial notice that the Defendant was represented by his attorney, Robert Wilson, Esq., at the January 31, 2002 hearing at which Defendant chose to willfully fail to appear. Defendant's attorney had a full opportunity to cross-examine the Receiver's witnesses, and was provided with a copy of the transcript of the January 31 proceeding shortly thereafter. The Court further notes that the two government witnesses, H. Marvin Harrison and F.B.I. Special Agent Paul Jacobs were available for further testimony and cross-examination on February 28, when they again testified.

2

restraining orders against Fred E. Morgenstern,[2] other Defendants and Relief Defendants, pursuant to the authority set forth in Title 18, United States Code Section 982, incorporating Title 21, United States Code, Section 853 (e) and (g). In those restraining orders, the Court included an order for the defendants to repatriate all Chemical Trust funds held in overseas bank accounts. Shortly after the entry of the initial restraining order, Fred E. Morgenstern was notified of the order. An Order of Permanent Injunction was entered on October 16, 2000, which was amended on January 31, 2002 by this Court. The Amended Permanent Injunction remains in effect against the Defendant to date.

2.     This Court also entered a Preliminary Order of Forfeiture and Final Order of Forfeiture as to Virgil Womack, thereby forfeiting funds seized from bank accounts and various items of personal property and real estate traceable to the Chemical Trust fraud. The Court has also assessed a money judgment against Virgil Womack, and has determined that millions of dollars of fraud proceeds remain unrecovered. The United States and the Receiver continue to investigate the whereabouts of unrecovered Chemical Trust investor funds.

3.     The evidence establishes that during the course of the Womack fraudulent investment scheme, over $30 million in Chemical Trust/Alliance Trust investor checks and funds were transferred to accounts controlled, either directly

---

[2] On January 11, 2000 the Court amended its restraining order dated January 7, 2000 and added Defendants Fred E. Morgenstern and the "Americas Resources Corp." (an entity and bank account controlled by Fred. E. Morgenstern), to the restraining order.

3

or indirectly, by Fred E. Morgenstern, including domestic and overseas accounts. Fred Morgenstern acknowledged that such funds passed through his "organizations," which included accounts captioned "The Americas Resources Corp." at Citibank in Florida.    Fred Morgenstern further acknowledged that he was the sole signatory on the Americas Resources accounts, and that they were established in order to facilitate the negotiation of Chemical Trust checks.

4.    Fred Morgenstern caused the subsequent transfer of a substantial portion of Chemical Trust funds he controlled to a Bahamian bank called "Americas International Bank Corp." ("AIBC". Mr. Harrison testified, and the Court finds, that these funds were deposited primarily into an AIBC account entitled "Americas Fidelity Assurance Corp." ("AFAC"), an account on which Defendant Fred E. Morgenstern's brother, David Morgenstern, was an officer/director. The Court finds that David Morgenstern had a Power of Attorney over the AFAC account as well as over an AIBC account named "Americas Fidelity Capital Management."    Fred Morgenstern also caused the direct deposit of $2.87 million in Chemical Trust investor checks into AIBC accounts, and admitted that he personally caused such deposits to be made. In addition, from August 10, 1999 to early January 2000 approximately $14 million in .Chemical Trust funds were transferred by Fred Morgenstern from Americas Resources to the AFAC account at AIBC.

5.    The first substantial deposit into the AFAC account at AIBC occurred on or about August 10, 1999, when Virgil Womack caused a $2.8 million transfer

(4)

of Chemical Trust funds to AIBC from Admiralty Bank.

6.    In addition, millions of dollars of Chemical Trust investor funds were transferred by Fred Morgenstern to an account in England called "Falcon Trust" at Barclays Bank.

7.    The Court finds that Chemical Trust funds held at AIBC were used to pay the expenses of Fred Morgenstern and others related to him. The Court finds that Fred Morgenstern and David Morgenstern ordered AIBC to make such payments to American Express accounts of which they were the primary users. With respect to Fred Morgenstern, the Court finds that in the fall and winter of 1999, Fred Morgenstern executed correspondence to Gary Christie, president of AIBC, and ordered payment of their respective American Express bills.    For example, on December 20, 1999, Fred Morgenstern requested that Gary Christie pay  $29,981.55 for the Fred Morgenstern American Express account, and $76,583.41 on David Morgenstern's American Express account.  Purchases on the Fred Morgenstern account for which such payments were made included various personal expenses of Fred Morgenstern, airline tickets, a vacation package to Colorado in December 1999 and for office equipment.  These correspondence and requests for sizeable payments on Fred Morgenstern's American Express accounts demonstrate to the Court Fred Morgenstern's control over the disposition of Chemical Trust funds.

8.    The Court finds that Fred Morgenstern executed other documents



5

which exhibited his control over Chemical Trust funds and his participation in the transfer of those funds out of AIBC.    Fred Morgenstern acknowledged that he forwarded a document (Government's Exhibit 23) to AIBC dated August 20, 1999 (shortly after Womack had first transferred $2.8 million dollars in Chemical Trust funds to AIBC) in which David Morgenstern requested that transfers from AIBC be made to two bank accounts in Europe.    During the hearing,    Fred Morgenstern acknowledged that he added certain instructions to that document, and signed it. Fred Morgenstern also identified Government's Exhibit 24 as having been signed by his brother David Morgenstern.    That document, addressed to "Gary," (Gary Christie) suggests that "in accordance with F's instructions," forward a $2.5 million draft.    The Government also introduced a copy of a $2.5 million check taken from AIBC records dated August 13, 1999, made payable to "Steward Arnold," who Fred Morgenstern identified as an attorney handling a "settlement" for David Morgenstern in England.    Despite testimony from Fred Morgenstern that he did not know who "F" was in Exhibit 24, the Court draws the inference that "F" was Fred Morgenstern and that Exhibit 24 further exhibits Fred Morgenstern's    control over and involvement in the disposition of Chemical Trust funds.

9.    The Government further demonstrated to the Court that a total of $2.8 million in Chemical Trust funds was transferred from AFAC to an account named "Slattocks Invest" at the Canadian Imperial Bank of Commerce, Switzerland, in October 1999.    These funds remain unrecovered, and actions have been taken in



6

Switzerland opposing the release, to the United States, of bank records for that account. Subsequent to the entry of this Court's restraining orders against Fred Morgenstern, two transfers were made to the American Express accounts of Fred and Victoria/David Morgenstern on August 23, 2000 in the amounts of $27,975 and $34,975 respectively. Fred Morgenstern acknowledged receipt of the $27,975 in payment on his American Express account. Based in part upon a corporate resolution appearing to have been executed in March 2000 (Government's Exhibit 9), the Court recognizes that it appears that David Morgenstern and/or his wife, Victoria may have actual signatory authority over this account. Nonetheless, particularly in conjunction with of other evidence introduced by the Government evidencing Fred Morgenstern's control over Chemical Trust funds during the course of the Womack investment fraud in late 1999, the Court draws the inference that receipt of this $28,975 payment further demonstrates Fred Morgenstern's continued control over funds traceable to the Chemical Trust fraud, and constitutes a violation of this Court's restraining order by Fred Morgenstern.

10.    On February 28, 2002, the Government further introduced certain videotapes which recorded a meeting on July 5, 2000 between Fred Morgenstern, his attorney Laurie Bolch, Esq., and a confidential informant working with the F.B.I. Transcripts of those meetings were also introduced into evidence. The Court notes that this meeting occurred subsequent to the entry of the Court's restraining orders. During that July 5, 2000 meeting, Fred Morgenstern acknowledges that his

"organizations handled thirty-seven million dollars" (of Chemical Trust funds), and that "substantially all that I handled is recoverable." Fred Morgenstern further stated that "a hundred percent of that money is recoverable." During the course of the meeting, Fred Morgenstern discussed with the confidential informant a detailed strategy for returning funds to the court-appointed Receiver. The Court finds that Fred Morgenstern's own statements demonstrate his ability to return, and thus control, Chemical Trust funds, and in failing to repatriate any such funds that may be in overseas accounts demonstrates his continuing violation of this Court's orders.

11.    The Government further introduced evidence from American Express records, summarized by H. Marvin Harrison, with respect to the purchase of certain computer and electronic equipment by Fred Morgenstern. Those purchases, according to the Government, were paid for with Chemical Trust funds by way of checks issued by AIBC to Fred Morgenstern's American Express account.

12.    On March 5, 2002, after having an opportunity to evaluate the videotapes introduced by the Government on February 28, the defendant presented evidence that, according to him, demonstrated that he lacks control over any Chemical Trust funds that may be held in overseas accounts and cannot comply with the Court's repatriation order. The defendant presented selected portions of the videotapes offered into evidence by the Government, and testified that he attended the July 5 meeting because he believed Vernon Shiflett, the confidential informant, could facilitate his returning funds to the Receiver. During his testimony,

however, he denied that he had any control over Chemical Trust funds, asserting that his brother David had such control and that he could not force his brother to do anything. The Defendant further testified that he acted only as an "escrow agent" who merely received and transferred over $30 million in Chemical Trust funds upon instructions from Virgil Womack.   The Defendant testified that he had no experience in international investments, and that the investment of Chemical Trust funds was accomplished by his brother David, whose business was separate and apart from the Defendant's. The Defendant testified that the reason Womack required his services to cash investor checks was to facilitate the investment of Chemical Trust funds in large block transfers.

13.   The Defendant testified that his only involvement with AIBC and its bank president, Gary Christie, was a contractual relationship with AIBC for the Defendant to arrange for certain office furnishings and provide other "consulting" services to the bank, for which he received approximately $200,000 in gross receipts and $15,000 in net income from the AIBC work.   He stated he probably devoted one month total time to this AIBC contract, and earned approximately $45,000 for other non-AIBC consulting work in 1999.  The Defendant stated that payments made by AIBC toward his American Express card were in payment for electronic equipment purchased for the bank's offices.  He indicated that those items of electronic and computer equipment were in the possession of AIBC, which is currently in liquidation.  The defendant stated that he was unaware that the

9

source of the August 23, 2000 American Express payment in the amount of $27,975 was the "Slattocks" account in Switzerland, that he had no signatory authority over any overseas accounts, including the Slattocks account, and that he did not know anything about that account.

14.    On cross-examination, the Government introduced Fred Morgenstern's (and his wife's) 1999 joint tax return, including Schedule C-EZ reporting sole proprietorship income. (Government Exhibit 20.)    On that return, Morgenstern reported only $36,000 in total income and $14,000 in "gross receipts" on Schedule C-EZ.    Morgenstern explained that the income derived from AIBC was paid to his corporations; however, upon questioning by this Court and upon an opportunity to confirm with his tax preparer by phone whether corporate tax returns were ever filed for 1999, he testified that they were not ever filed.    The Court finds Defendant's testimony not to be credible, particularly in light of the fact that he never filed any corporate tax returns which would have reported the $200,000 in gross receipts and $45,000 in net income derived from the alleged AIBC consulting services contract.

15.    The Defendant further acknowledged a 1992 federal conviction for Transportation of Stolen Securities, for which he received a term of imprisonment. He also acknowledged knowing that his brother David Morgenstern was likewise convicted of Transportation of Stolen Securities in the same case.

16.    In consideration of all of the testimony and evidence presented to the


10

Court by the Government and Receiver, the testimony of the Defendant and the exhibits, including recordings of the Defendant, correspondence and other documentary evidence, the Court finds that the Defendant's involvement in the transfer of millions of dollars of Chemical Trust funds is substantial, and extends to transfers made out of AIBC to other overseas accounts. The Court does not find credible the Defendant's contention that he does not have control over unrecovered Chemical Trust funds.

### CONCLUSIONS OF LAW

17.    The purpose of civil contempt is to coerce compliance with a court order and is remedial. To establish civil contempt, the moving party must establish the following elements by clear and convincing evidence: 1) the existence of a valid decree of which the alleged contemnor had actual or constructive knowledge; 2)...that the decree was In the movant's "favor"; 9)...that the alleged contemnor by its conduct violated th terms of the decree, and had knowledge (at least constructive knowledge) of such violations; and 4) that (the) movant suffered harm as a result. Ashcraft v. Conoco, Inc., 218 F. 3d 288, 301 (4th Cir. 2000), quoting Colonial Williamsburg Found. v. the Kittinger Co., 792 F Supp. 1397, 1405-06 (E.D. Va. 1992), aff'd, 38 F.3d 133, 136 (4th Cir. 1994).   A party asserting that he is incapable of complying with such an order must show "categorically and in detail"



11

why he is unable to comply.  <u>Federal Trade Commission v. Affordable Media, LLC</u>, 179 F.3d 1228, 1240 (9th Cir. 1999), <u>citing NLRB v. Trans Ocean Export Packing, Inc.</u> 473 F.2d 612, 616 (9th Cir. 1973).

18.    The Court has considered the United States' and Receiver's Joint Motion, the testimony and evidence presented and the record, and concludes that the movants have proven by clear and convincing evidence that Fred Morgenstern is in civil contempt of this Court's orders.  Specifically, the Court finds that Fred Morgenstern, having timely  notice of restraining orders which have remained in effect throughout the pendency of this action, was in direct or indirect control of such funds subsequent to the entry of such restraining orders against him.  Such control is established by evidence of his control over funds during the latter part of 1999, during which time he facilitated the transfer of millions of dollars of Chemical Trust funds to overseas accounts in the Bahamas and in England, of his ordering AIBC to accomplish transfers of funds for various purposes, including transfers toward his American Express bill, and in receiving funds in payment of such bills. Moreover, there is clear and convincing evidence that, subsequent to the entry of this Court's restraining orders in January 2000, the Defendant continued to maintain such control over unrecovered Chemical Trust funds in acknowledging on videotapes his ability to recover missing Chemical Trust funds and in receiving payments on his American Express card bill with funds shown to be traceable to Chemical Trust investors.  Those payments include a $27,975 wire-transfer made in August 2000

12

from Canadian Imperial Bank of Commerce in Switzerland, and a $16,785.15 payment from AIBC in April 2000 to the American Express account he shared with his father, Harold Morgenstern.

19.    The Government and the Receiver have established that $2.8 million--a small portion of the still unrecovered Chemical Trust funds--was transferred from AIBC to the Slattocks account at the Canadian Imperial Bank of Commerce, Switzerland, from which Defendant received the $27,975 payment.    This Court finds that, in light of the evidence presented, Defendant Fred Morgenstern maintains control of such funds and is not incapable of returning such funds.   In not having repatriated such funds to the Receiver, Defendant is in continuing violation of this Court's restraining orders.   Accordingly,

IT IS HEREBY ORDERED that Fred Morgenstern is committed forthwith to the custody of the United States Marshal until such time as he may purge this civil contempt by 1) repatriating and disgorging to the Receiver the $2.8 million transferred on or about October 7 and 15, 1999 from Americas International Bank Corp., Nassau Bahamas, to the "Slattocks Invest, S.A." account #21444 at Canadian Imperial Bank of Commerce (Switz.), Ltd., wherever those funds may currently be; 2) by disgorging to the court-appointed Receiver $27,975 transferred from said Slattocks account on or about August 23, 2000  in payment on his American Express card bill; and 3) by disgorging to the court-appointed Receiver $16,785 transferred from Americas International Bank Corp., Inc. , Nassau,



13

Bahamas, in payment on his American Express card bill.

IT IS SO ORDERED

G. ROSS ANDERSON, JR.
UNITED STATES DISTRICT JUDGE

March ___, 2002
Anderson, South Carolina

## NOTICE OF RIGHT TO APPEAL

Plaintiff has the right to appeal this Order within sixty (60) days from the date hereof, pursuant to Rules 3 and 4 of the Federal Rules of Appellate Procedure. Failure to meet this deadline, as modified by Rule 4 of the Federal Rules of Appellate Procedure, will waive the right to appeal.

14

AO 72A
(Rev.8/82)