UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 00-6309-CR-SEITZ (s)(s)

UNITED STATES OF AMERICA,

Plaintiff,

v.

FRED MORGENSTERN,

Defendant.
_____/

## DEFENDANT'S APPEAL FROM MAGISTRATE'S DENIAL OF DISCOVERY MOTION OR, IN THE ALTERNATIVE, MOTION FOR AUTHORIZATION TO INCUR INVESTIGATIVE EXPENSES

Counsel for Defendant Frederick E. Morgenstern moves that the Court overrule the order of Magistrate Judge Garber, denying defendant access to the daily logs and ten day reports prepared by the government during the Title III intercepts on Mr. Morgenstern's telephone. In the alternative, since this ruling seems to have been predicated on the belief that access to the raw data is good enough, Mr. Morgenstern asks for authorization to incur up to $5,000 in investigative expense, at a rate of $40 per hour, to have an investigator listen to the 3,000 intercepts involving Mr. Morgenstern and the total of 6,000 intercepts. In effect, the investigator would recreate the daily logs and the ten day reports. Mr. Morgenstern cannot do this himself because his is incarcerated in the District of South Carolina on civil contempt for failure to pay money he does not have.

A copy of Mr. Morgenstern's motion is attached to show that Mr. Morgenstern

cannot be prepared for trial unless review of the body of the intercepts is undertaken. As shown in the government's application for an extension of the court authorized intercept, many of Mr. Morgenstern's conversations were exculpatory. These are rejected by the government's affiant as "lies." The conclusion that they are lies is based on an undifferentiated reference to the other intercepted conversations.

Clearly, Mr. Morgenstern should have access to the daily logs and ten day reports to prepare to meet these allegations. If, however, that access is denied, then he should have the opportunity to have his own investigator listen to the tapes, to prepare summaries, to evaluate the conversations and, in essence, reproduce what the government has already done in its daily logs and ten day reports.

I HEREBY CERTIFY that a true copy of the forgoing has been mailed, postage prepaid, this 21st day of March, 2002, to AUSA Bryan McCormick; 500 E. Broward Blvd, Ste 700; Ft. Lauderdale, FL 33394.

Respectfully submitted,

William M. Norris
William M. Norris, P.A.
7685 S.W. 104 Street, Suite 220
Miami, Fl 33156
Tel. 305-661-6118
Fax. 305-667-6161
Attorney for Fred Morgenstern

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 00-6309-CR-SEITZ (s)(s)

UNITED STATES OF AMERICA,

        Plaintiff,

v.

FRED MORGENSTERN,

        Defendant.
_____/

## DEFENDANT FRED MORGENSTERN'S MOTION FOR TEN DAY REPORTS AND DAILY LOGS OF COURT AUTHORIZED TELEPHONE INTERCEPTS.

Undersigned counsel for defendant Fred Morgenstern has been assigned a remarkable task, getting ready to defend a case the government has spent many years assembling in a matter of a few days. He assumed that he would inherit a complete file and enjoy a productive relationship with the prosecutor. Counsel's assumptions may have been incorrect.

He has been told that there are 6,000 court authorized intercepts of which some 3,000 involve his client, but he is unable to verify any of the many rumors he has heard about the execution of the several intercept orders involved in this case because he does not have any of the ten day reports nor any of the daily logs generated during the government's wiretaps.

The affidavit in support of what counsel presumes to be the final wiretap, executed by FBI Special Agent Patrick G. Brodsky before United States District Judge William P.

1

Dimitrouleas on February 11, 2000, presents a microcosm of the problem the government's failure to produce the daily logs and periodic reports creates and demonstrates the defendant's need for the relief sought in this motion.

The February affidavit makes reference to thirty-nine intercepted conversations. Of this total, Fred Morgenstern took part in 23 conversations and, although not a participant, was referred to in six more. The balance of the intercepts referred to in the February affidavit, ten calls, are non-pertinent, dealing with Mamone's gambling or loansharking business. How many total calls there were in total and what was discarded in the agent's editing process is unknown without the logs.

The affidavit reveals something extraordinary. Many of the calls are exculpatory. Agent Brodsky dismisses the exculpatory nature of these calls, but does so in a way that demonstrates Mr. Morgenstern's need for the materials requested in this motion in order to establish that the conversations are truly exculpatory and that the Agent's dismissal of them as lies is wrong. For example:

¶53 discusses a telephone call from Mamone to Morgenstern only hours after the search of Gold Coast Check Cashing, Inc., started on January 7, 2000. The agent says in his affidavit; "Morgenstern was incredulous that the FBI was taking everything out of 'our' store"[1] and "Morgenstern complained that 'they' were just cashing the checks." The agent adds the editorial comment: "Based on the investigation thus far, it appears in this conversation that Mamone is breating Morgenstern for having gotten Mamone in volved in a money laundering operation . . ."

---

[1] Names in the quotations are rendered in lower case instead of the upper case of the original.

2

¶57 is an apparently innocuous telephone call from Mamone to Grace Mamone to which the agent editorializes "Based on the investigation thus far, this conversation appears to be direct evidence of Mamone's knowledge of Morgenstern's money laundering activity."

¶56 is a call from Morgenstern to Peggy Preston. "Morgenstern stated that he (Morgenstern) didn't know what Morgenstern had gotten them into, that what they had done was legitimate, that they didn't have anything to do with 'this person' except to set up his little accounting shop in our place." Editorially, Agent Brodsky makes reference to the cashing of checks in "a manner which would disguise the source of those funds" and concludes "Therefore in this conversation, Morgenstern is obviously lying when he said that all he did was set up a small accounting shop."

¶57 discusses a second telephone conversation between Morgenstern and Mamone on January 7, 2000. Agent Brodsky concludes "Although both Mamone and Morgenstern are disclaiming any knowledge of the Womack's investment fraud and their role in it, their previous conversation ... make it clear that they were both aware that the cashing of the investors' checks was money laundering."

¶60 dicusses a telephone call from Morgenstern to Preston the next day, January 8, 2000, in which "Morgenstern stated that they (the FBI) did not go to all the stores, and that once they (the FBI) look at the paperwork, they would see that we (Morgenstern and others) were not conspiring with him (believed to be a reference to Virgil Womack), that 'we' where just sending the money where he (Virgil Womack) would direct." Again, Agent Brodsky editorializes that Morgenstern "is apparently trying to convince Preston that what they did was legitimate." "However, based on other converstions . . . it is clear

3

that Morgenstern actually knew that the cashing of the checks for the Womacks constituted money laundering."

This synopsis should make clear to the court that Fred Mogenstern, unaware that the Federal Bureau of Investigation was listening to his every word, repeatedly said he was innocent, that he was not engaged in criminal activity, and that he trusted the FBI top recognize that fact once they had reveiwed the paperword he generated in his business. In fact, the Federal Bureau of Investigation, in the person of Special Agent Patrick G. Brodsky, rejected his claim of innocence as a lie.

The FBI has branded Fred Morgenstern as a liar on the strength of their wire tap results. To defend, Mr. Morgenstern must have access to those same wiretap results in a form that his lawyer can use. The law requires ten day reports and the FBI generates logs to demonstrate thier compliance with the law. Mr. Morgenstern is entitled to those papers to prepare his defense.

WHEREFORE, defendant Fred Morgenstern requests that his motion for production of these documents be granted.

Respectfully submitted,

William M. Norris
William M. Norris, P.A.
7685 S.W. 104 Street, Suite 220
Miami, Fl 33156
Tel. 305-661-6118
Fax. 305-667-6161
Attorney for Fred Morgenstern

4

CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true copy of the forgoing has been mailed, postage prepaid, this 25th day of January, 2002, to AUSA Brian McCormick; 500 E. Broward Blvd, Ste 700; Ft. Lauderdale, FL 33394, and all counsel of record.

_____
William M. Norris