UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.   00-6309-CR-DIMITROULEAS (S)(S)


UNITED STATES OF AMERICA,

                    Plaintiff,

v.

FRED MORGENSTERN, et al.

                    Defendants.
_____

GOVERNMENT'S MOTION TO RESOLVE
TAPE RECORDING RELATED ISSUES AND
INCORPORATED MEMORANDUM OF LAW


        The  United  States  of  America,  through  its  undersigned

Assistant United States Attorneys, files this motion to Resolve all

Tape Recording Related Issues and urges that such matters should

properly be conducted outside the presence of the *jury* and prior to

the commencement of the trial, pursuant to *Fed. R. Crim. P.* 104.

Title 28 U.S.C. Section 636 authorizes the District Court to refer

the matter to a Magistrate if it desires.

PROCEDURAL HISTORY

        At  trial,  the  government  will  offer  into  evidence  certain

audiotapes and videotapes, with corresponding transcripts, which

were previously made available to the defendants.   Specifically,

the government presently intends to offer in its direct case 51

conversations  from  the  electronic  surveillance.    To  date,  the

defendants have filed no challenge to the admissibility of this

evidence.



As the recordings described above are clearly relevant to the offenses charged in the indictment, the government respectfully requests that the Court conduct a pre-trial hearing, pursuant to *Fed. R. Ev.* 104, to consider the remaining issues regarding the admissibility of these recordings. Such a hearing is necessary in order to avoid the needless waste of the jury's time while the Court considers issues upon which it has sole authority. The Court's pre-trial determination of these issues, outside the presence of the jury, is the preferred way to handle challenges to the accuracy and audibility of tape recordings. *See United States v. Carbone*, 798 F.2d 21, 25 (1st Cir. 1986). In order to effectively conserve the Court's time at this hearing, the government further requests that the Court direct each defendant to specify his particular objections, if any, to the admission of these recordings prior to the commencement of the hearing.

MEMORANDUM OF LAW

I.   <u>Admissibility of Tape Recordings</u>

a.   Authenticity

The Fifth Circuit, in *United States v. Biggins*, 551 F.2d 64, 66 (5th Cir. 1977), established the controlling criteria that the government must satisfy before introducing sound recording evidence.[1]   Specifically, *Biggins* requires, as a general rule,

---

[1] In developing these criteria, the Court declined to adopt the stringent test established by the Eighth Circuit in *United States v.McMillan*, 508 F.2d 101, 104 (8th Cir. 1974).

that the government[2] must provide proof regarding the competency of the operator, the fidelity of the recording equipment, the absence of material deletions, additions, or alterations in the relevant portions of the recording and the identification of the relevant speakers. *Id.* However, *Biggins* instructs that if the trial court independently determines that a particular recording accurately reproduces the auditory evidence, then the court has the discretion to admit it without a "formalistic adherence to the standard [established by the Fifth Circuit]." *Id.* at 67.

Both direct and circumstantial evidence may be used to determine the accuracy of the tape recordings. *See United States v. Bright*, 630 F.2d 804 (5th Cir. 1980). The government is not required to establish to an absolute certainty that the recording has not been changed but instead is obliged to show only that there is a reasonable probability that the tape has not been altered. *Id.* at 819, citing *United States v. Haldeman*, 559 F.2d 31 (D.C. Cir. 1976). Accord *United States v. Shabazz*, 724 F.2d 1536, 1539 (11th Cir. 1984). Where the government establishes, through

---

[2] The *Biggins* court found that the burden of establishing this criteria was appropriately placed on the government, in part, because a defendant "will often hear the tape recording for the first time in court." *Id.* By contrast, in the current case, the defendants have had access to the recordings for approximately a year and a half and have had ample opportunity to review all of the recorded evidence that will be offered at trial. Moreover, courts have implied that the *Biggins* foundation should be relaxed where the party opposing the admission of the tapes does not make a well-founded accusation of impropriety or inaccuracy. *See, e.g., United States v. Shabazz*, 724 F.2d 1536, 1539 (11th Cir. 1984); *Louis Vuitton v. Spencer Handbags Corp.*, 765 F.2d 966, 974 (2d Cir. 1985).

testimony, that the offered recordings are actual reproductions of conversations that have occurred, it is not required to prove chain of custody. *See United States v. McCowan*, 706 F.2d 863 (8th Cir. 1983), citing *United States v. Derring*, 592 F.2d 1003 (8th Cir. 1979); *United States v. Mahone*, 537 F.2d 922, 930 (7th Cir. 1976).

The authenticity of the recording may be established by a witness testifying that the tape accurately depicts the conversations recorded. *See Louis Vuitton*, 765 F.2d at 973. The authenticating witness need not necessarily be someone who participated in or personally overheard the subject matter of the recording. *See United States v. Rengifo*, 789 F.2d 975, 978 (1st Cir. 1986); *United States v. Fuentes*, 563 F.2d 527, 532 (2d Cir. 1977). Instead, circumstantial evidence may be sufficient to authenticate the conversation. *See Rengifo*, 789 at 978; *United States v. Cortelleso*, 663 F.2d 361, 364 (1st Cir. 1981); *United States v. Millan,* 817 F. Supp. 1072 (S.D.N.Y. 1993). The First Circuit, in *Rengifo*, noted that a sufficient foundation for the admission of recorded conversations was established when the government offered a witness who, although he had not heard or participated in the recorded conversations, had supervised the wiretap from the day it was authorized and was able to provide a detailed and particular knowledge of the interception procedures used and the activities of the agent who manned the listening post. *See Rengifo*, 789 F.2d at 978-79.

4

Voice identifications also may be satisfied by direct or circumstantial evidence. To establish the identity of the relevant speakers, a witness' familiarity with the voice sought to be identified is sufficient to ensure the reliability of the identification. The witness may have developed familiarity with the voice either before or after the time of the recording. *See Biggins*, 551 F.2d at 68, citing *Fed. R. Ev.* 901(b)(5). Courts have upheld voice identifications made through a variety of methods as exemplified by the Ninth Circuit in *United States v. Scully*, 546 F.2d 255 (9th Cir. 1976).

In *Scully*, the Ninth Circuit upheld the government's authentication foundation over the appellants' contention that the government failed to produce sufficient evidence to identify the six speakers in the conversations. *Id.* These identifications resulted from a variety of means. An agent identified two of the voices based on his personal conversations with the individuals involved as well as his hearing them speak on other occasions. *Id.* at 270. A third voice was identified by an agent who compared the voice to the voice as played on a tape which was previously authenticated. *Id.* Circumstantial evidence was used to

5

authenticate the three other voices.[3]   *Id.*   The Ninth Circuit upheld all methods of authentication used by the government.   *Id.*

Similarly a "telephone conversation may be shown to have emanated from a particular person by virtue of its disclosing knowledge of facts known peculiarly to him."   *See* Advisory Committee notes to Rule 901(b)(4).   Courts have endorsed authentication of speakers based upon evidence of the context and timing of a call or the speaker's response in a manner expected due to an earlier communication.   *See, e.g., United States v. Espinoza*, 641 F.2d 153, 170 (4th Cir. 1981)(approval of the use of circumstantial evidence "to identify [the defendant] as the person" with whom a witness had spoken on the telephone regarding an order for "kiddie porn").[4]

Finally, in the *Biggins* analysis, to establish the competency of the operator and the fidelity of the recording equipment, the fact that the recording was successfully made will suffice.   *See McCowan*, 706 F.2d at 863.   After the government establishes the proper *Biggins* foundation for the admissibility of the recordings,

---

[3] The voice of appellant George Cabral was authenticated by evidence that a person who identified himself as "George" on the tape used a telephone located at the residence where George Cabral lived.   *Id.* at 270.   The voices of appellants Steven Sanchez and Terrance Macedo were authenticated by testimony that persons who identified themselves as "Steve" or "Terry" made or received calls from residences where Sanchez and Macedo lived, respectfully.   *Id.*

[4] The shipping of the "kiddie porn" to the witness, and the fingerprint of the defendant on the invoice compelled the court to support the identification of the defendant's voice in the district court.   *Id.*

the defendant has the burden of rebutting that foundation. *See United States v. Sarro*, 742 F.2d 1286, 1292 (11th Cir. 1984), citing *United States v. De La Fuente*, 548 F.2d 528, 533-34 (5th Cir. 1977).

In the current case, the government will be offering duplicated recordings of the original taped conversations. Where the government establishes through testimony that the duplicate recordings are exact recordings of conversations contained in the original tapes, they are admissible. See United States v. DiMatteo, 716 F.2d 1361, 1368 (11th Cir. 1983). The burden of raising a genuine issue as to the authenticity of the originals is on the party opposing admission. *Id.*, citing *United States v. Georgalis*, 631 F.2d 1199, 1205 (5th Cir. 1980). *See also United States v. Whitaker*, 372 F. Supp. 154 (M.D.Pa. 1974) (finding summary tapes of wiretap conversations admissible where the defendants failed to show inaccuracy), *affirmed*, 503 F.2d 1400 (3rd Cir. 1974); *United States v. Riccobene*, 320 F. Supp. 196 (E.D.Pa. 1970)(copies of tape recordings admissible where defendants failed to show inaccuracy), *affirmed*, 451 F.2d 586 (3d Cir. 1971). Testimony that a copy of a recording accurately reflects the conversation will suffice to overcome a non-specific objection based on the fact that a duplicate, and not the original, is being introduced. *See DiMatteo*, 716 F.2d at 1368.

b.   <u>Audibility</u>

Another criterion for admission is that the tapes be sufficiently audible and comprehensible for the jury to consider their contents. *See United States v. Slade*, 627 F.2d 293, 301 (D.C. Cir. 1980). For example, gaps or inaudible portions do not constitute a bar to admissibility unless they are so substantial as to render the entire recording untrustworthy. *See United States v. Lively*, 803 F.2d 1124, 1129 (11th Cir. 1986). *See also United States v. Llinas*, 603 F.2d 506, 508 (5th Cir. 1979). Inaudibility goes to the weight rather than the admissibility of audiotapes. *United States v. Vega*, 860 F.2d 779, 790 (7th Cir. 1988). Further, when a recording is offered only to show that a conversation occurred between the parties, the fact that substantial portions of the conversations are unintelligible should not cause its exclusion. *See* James G. Carr, <u>The Law of Electronic Surveillance</u>, 450 (1977).

The trial court has broad discretion in determining whether to allow an imperfect recording into evidence. In *United States v. Harrell*, 788 F.2d 1524 (11th Cir. 1986), the appellants challenged the trial court's refusal to omit certain tapes from evidence based on imperfections on the tapes. The court upheld the admission of the tapes into evidence in spite of the imperfections where the trial court fully satisfied the authenticated requirements set forth in *Biggins*. *Id.* at 1527.

8

In *United States v. Wilson*, 578 F.2d 67 (5th Cir. 1978), the Fifth Circuit noted the standard to be applied in cases in which problems of tape unintelligibility exist:

> Tape recordings which are only partially unintelligible are admissible unless the unintelligible portions are so substantial as to render the recording as a whole untrustworthy. The initial decision whether to admit into evidence a recording containing inaudible or unintelligible portions is committed to the sound discretion of the trial court. Here, the district court listened to the tape and recognized that some of the conversation was not intelligible, but found that a sufficient portion was understandable and had enough probative value to warrant its admission. After carefully listening to the tape, we agree with the district court's decision to admit the tape. While some portions of the recording are inaudible and unintelligible, much of it can be heard clearly. Certainly, defendants have not shown an abuse of the district court's discretion.

*Id. at 69.*

The court in *United States v. Bynum*, 567 F.2d 1167 (1st Cir. 1978), also deferred to the trial court's discretion in admitting an imperfect videotape of a bank robbery. The appellant argues that the film was so hazy as to be useless to the jury. On review, the *Bynum* court noted that the determination of whether a videotape is sufficiently clear to be admitted in evidence was a matter properly within the trial court's discretion and found no abuse in the decision to admit the videotape. *Id.* at 1171.

In *United States v. Robinson*, 763 F.2d 778 (6th Cir. 1985), the appellants challenged the trial court's admission into evidence of partially inaudible recordings of conversations which occurred in a defendant's judicial chambers. The court upheld the admission

9

of the tapes into evidence despite the background noises which rendered portions of the tape recordings inaudible. *Id.*

Given the inherent difficulties in the ability of recording equipment to produce flawless recordings, courts will allow a party offering taped evidence to use certain techniques designed to improve clarity. Filtering a tape to improve audibility and comprehension is no bar to admissibility. *See Slade*, 627 F.2d at 301; *United States v. Craig*, 573 F.2d 455, 477-79 (7th Cir. 1977). Audibility is often affected by background noise, accents and speaking speeds of the speakers, deafness of the listener, slang, weather conditions, etc. Filtering, use of earphones and/or use of transcripts are all acceptable ways to improve audibility and/or comprehension. *See Haldeman*, 559 F.2d at 54, n. 15; *United States v. Bryant*, 480 F.2d 785, 790 (2d Cir. 1973); *Fountain v. United States*, 384 F.2d 624, 631 (5th Cir. 1967). Finally, if by using a transcript a person is better able to hear and understand the conversation, then the tape's audibility has been established. *See United States v. Kirk*, 534 F.2d 1262, 1276-77 (8th Cir. 1976).

In summary, while an audio or video recording offered into evidence must be sufficiently clear and comprehensible to the jury in order to be admissible, imperfections alone will not justify exclusion. Moreover, clarity enhancing techniques will be allowed so long as they do not rise to the level of material manipulations.

II.  Use of Transcripts

The government intends to offer into evidence transcripts which correspond to the recordings being offered.  Because the transcripts satisfy the Fifth Circuit's requirements for admissibility, they should be admitted during the course of the trial to assist the trier of fact.

In the seminal case of *United States v. Onari*, 535 F. 2d 938 (5th Cir. 1976), the Fifth Circuit set forth guidelines for admission of transcripts as aids to the jury during the playing of tape recordings.  The *Onari* court instructed that the trial court should first attempt to divise a "stipulated" transcript to which all parties can agree, preferably at a pre-trial conference.  If no "official" transcript can be produced, then each side should be allowed to admit its own version of a transcript, for consideration by the jury as a matter of contested fact.  In such an event, each party would be allowed to present evidence supporting the accuracy of its version.  *Id.* at 949.  Where, as here, the government has produced transcripts of the tape recordings, it is each defendant's burden to challenge the accuracy of those transcripts by presenting the Court with his own version.  *See United States v. Cruz*, 765 F.2d 1020 (11th Cir. 1985).  His failure to do so precludes his objecting to the accuracy of the government's versions.  *Id.; See also, United States v. Rosenthal*, 793 F.2d 1214 (11th Cir. 1986); *United States v. Llinas*, 603 F.2d 506 (5th Cir. 1979); *United States v. Wilson*, 578 F.2d 67 (5th Cir. 1978).

11

Therefore, as none of the defendants have provided the Court or the government with any alternative transcripts, the government respectfully requests that the Court submit the transcripts offered by the government into evidence.

<u>CONCLUSION</u>

WHEREFORE, the government respectfully requests that the Court allow the admission of audio recordings and transcripts offered by the government, that the Court resolve any issues regarding their admission prior to trial and outside the presence of the jury, and that the Court direct the defendants to assert any specific objections which they may have prior to the commencement of the trial.

Respectfully submitted,

GUY A. LEWIS
UNITED STATES ATTORNEY

By: _____
J. BRIAN McCORMICK
ASSISTANT UNITED STATES ATTORNEY
Court I.D. #A5500084
500 East Broward Blvd., Suite 700
Fort Lauderdale, FL 33394
Telephone: (954) 356-7392
Fax: (954) 356-7230

By: _____
DIANA L.W. FERNANDEZ
ASSISTANT UNITED STATES ATTORNEY
Court I.D. #A5500017

By: _____
JAMES R. PAVLOCK
SENIOR TRIAL ATTORNEY
DOJ/CRIMINAL DIVISION
Court I.D. #A5500657

## CERTIFICATE OF SERVICE

I HEREBY certify that a true and correct copy of the foregoing was hand delivered this _11ᵗʰ_ day of _May_, 2002 to:

William Norris, Esq.
7685 SW 104ᵗʰ Street, Suite 220
Offices of Pinecrest II
Miami, FL 33156
(Counsel for Fred Morgenstern)

Scott William Sakin, Esq.
1411 NW North River Drive
Miami, FL 33125
(Counsel for David Morgenstern)

Richard Sharpstein, Esq.
777 Brickell Avenue, Suite 500
Miami, FL 33131
(Counsel for Joseph Silvestri)

Phillip R. Horowitz, Esq.
Two Datran Center
9130 South Dadeland Blvd.,
Suite 1910
Miami, FL 33156
(Counsel for Mark Weiss)


DIANA L.W. FERNANDEZ
Assistant United States Attorney