UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

UNITED STATES OF AMERICA,              CASE NO: 00-6309-CR-DIMITROULEAS

      Plaintiff,

vs.

FRED MORGENSTERN,

      Defendant.

_____/



### DEFENDANT FRED MORGENSTERN'S RESPONSE IN OBJECTION TO GOVERNMENT'S MOTION TO REINSTATE CONDITIONS OF BOND PENDING SENTENCING

COMES NOW the Defendant, FRED MORGENSTERN, by and through his undersigned CJA attorney, WILLIAM CLAY, and hereby files the instant Response in Objection to Government's Motion to Reinstate Conditions of Bond Pending Sentencing and would state the following:

1.    On May 21, 2002, the Defendant, FRED MORGENSTERN, entered his plea of guilty to certain charges.

2.    Subsequent to the aforementioned guilty plea, the instant case was transferred pursuant to Rule 20 of the Federal Rules of Criminal Procedure to United States District Court, District of South Carolina for sentencing. Special conditions of bond/pre-trial release that had been previously issued by the Southern District of Florida were essentially deleted by the ruling of the US District Court in South Carolina. This action was completed on or after July 22, 2002 in the District Court of South Carolina.

1



BILL CLAY P.A. II    11440 N. KENDALL DR. • PENTHOUSE 400 • MIAMI, FL 33176 • TELEPHONE (305) 595-0866 • FAX (305) 595-9732

3.      Undersigned counsel respectfully submits that the US District Court in South Carolina was in the best position to decide on what were the most appropriate special conditions of bond/pre-trial release.   The Government, apparently, in the aforementioned proceedings in US District Court, District of South Carolina, did not seek to contest the Court's ruling in South Carolina regarding bond terms and conditions.

4.      On July 15, 2002, the Government, by and through its counsel, AUSA Brian McCormick, did file a Response to Defendant Morgenstern's Motion for Reinstatement of Bond (DE #1082).  **In that Response, the Government took the position that the bond decision should be made by the Court in the District of South Carolina. The Government argued that the matter was moot.**  Based upon the Government Response and position, this Court did enter an Order on July 16, 2002 (DE #1083) wherein the Court ruled that the bond matter was moot and that any further motion should be addressed to the District of South Carolina.  **On July 22, 2002, Court in the Southern District of South Carolina did exactly what the Government suggested - the Court ruled on the Defendant's bond reinstatement motion and granted the Defendant a $25,000 unsecured bond with no special condition other than the Defendant was restricted in his travel to the State of Florida except on those occasions where his Court appearance was required in the District of South Carolina.**   The Defendant has faithfully complied with the terms and conditions of that bond set by the District of South Carolina which is presently governing the Defendant in the instant case.

2

5.    The Government in its instant Motion to Reinstate Conditions of Bond Pending Sentencing seeks a modification of the Defendant's conditions of bond to require that the Defendant be placed on twenty-four (24) hour house arrest with electronic monitoring until sentencing and that the Defendant "refrain from engaging in any commercial or financial transactions pending sentencing in this matter". Pursuant to a written request by undersigned counsel asking that the Government further define its request re: "financial transactions", Government did advise undersigned counsel by letter dated February 11, 2003 that the Government will seek the following modified condition of bond to read as follows: "The Defendant is prohibited from engaging in any business enterprise that involves any form of financing or investment of third-party funds or capital."

6.    The Government, by and through its prosecutors here in the Southern District of Florida, have <u>not</u> shown any good cause for the Government proceeding at this late point of time in an attempt to impose more onerous bond conditions that then had been in place in the United States District Court, District of South Carolina. Furthermore, the Government is actually seeking <u>new</u> and harsher conditions of bond/release for Fred Morgenstern - house arrest pending sentencing. Undersigned counsel respectfully submits there is absolutely no justification for such a request for house arrest.

7.    Undersigned counsel respectfully comments that it is particularly conspicuous that the Government has waited until February 3, 2003 to file its Motion to Reinstate Conditions of Bond Pending Sentencing.

3

8.    Based upon undersigned counsel's information and belief, Defendant Fred Morgenstern has been in complete compliance with the currently pending terms and conditions of his bond/release.

9.    The Defendant is presently set for sentencing on April 18, 2003. Imposition of these more cumbersome and stringent conditions of bond, at this point in time, while the Defendant is devoting his time and energy to consult with his third CJA counsel, who has just recently been appointed by this Court on or about February 4, 2003, would work an extremely prejudicial impairment to the Defendant's effort to prepare this very complicated and convoluted case for sentencing.

10.    The Government's Motion to Reinstate Conditions of Bond Pending Sentencing raises in paragraph number 4 thereof, the episode wherein the Defendant failed to appear for a civil hearing before Judge Anderson in US District Court in South Carolina. As correctly noted in the Government's Response, the Defendant was punished for that alleged contempt of court for his failure to appear on January 31, 2002 for a Show Cause hearing in a civil matter. The Defendant was restored to bond on July 22, 2002 and the Court for the US District of South Carolina set a $25,000 unsecured bond with no special conditions other than restricting the Defendant's travel to the State of Florida except to permit travel to the District of South Carolina for court appearances. Obviously, the Court in the District of South Carolina was in the best position to assess and evaluate the Defendant's alleged contempt conduct and how it boar upon any issues pertaining to the Defendant fulfilling his obligations to the criminal court in attending future court appearances

4

etc. The Defendant and undersigned counsel respectfully submit that there is no reason to revisit and/or modify the aforementioned decision of the District Court of South Carolina of July 22, 2002. However, in an abundance of caution and thoroughness, undersigned counsel sets forth the following extenuating circumstance and contextual information surrounding the Defendant's failure to appear in the aforementioned civil matter:

    A.    With regard to the aforementioned court appearance in South Carolina, the Defendant found himself in a "catch 22" situation when he was advised that his appearance was necessary at a civil hearing in South Carolina. The "catch 22" situation was that the Defendant was <u>not</u> permitted to travel outside the Southern District of Florida by the terms and conditions of the bond by which he was governed at that point in time. Furthermore, the Defendant had been advised by his civil counsel, Robert C. Wilson, of Greenville, South Carolina and Laurie Bolch, of Boca Raton, Florida that they were expecting the hearing to be continued or postponed.

    B.    At the last minute, the Defendant was advised by his civil attorneys that the matter had not been continued or postponed and the Defendant actually purchased tickets to travel to the civil hearing on January 31, 2002. The Defendant, however, was extremely concerned about whether or not his travel to South Carolina would violate his Southern District of Florida bond conditions which were

5

in force and effect at the time as he had not received court approval for the out of district travel. Upon advice of counsel, and in the exercise of prudence, the Defendant did not respond to South Carolina for fear that he would violate his Southern District of Florida bond in this matter and subject the guarantors to financial losses.

10. With regard to the alleged civil contempt penalty for which the Government refers in paragraph 4 of the aforementioned Government motion, that issue was resolved by the District Court in South Carolina and the Defendant was sanctioned accordingly. The Court in the District of South Carolina had personal knowledge of the facts and circumstances of that matter when the Defendant's bond was set on July 22, 2002 in this case. Therefore, any impact or relevance to either the criminal contempt or civil contempt was obviously factored into the court's decision making process when the bond decision of July 22, 2002 was made by the District Court in South Carolina. Therefore, there is absolutely no necessity for this Court to delve into those issues, nor would it be fair to the Defendant for the Court to do so.

11. The Government notes in footnote no. 1 to paragraph 10 of its motion the allegation that during 2002 the Defendant engaged in structuring monetary transactions in an amount in excess of $400,000. The Defendant and undersigned counsel respond to this footnote as follows:

    A. The transactions in question pertain to the Defendant's personal and/or business accounts. No third party funds were involved.

6

B.    The transactions in question were for valid and lawful purposes and not for the purpose of causing any financial institution to fail to file Currency Transaction Reports (CTR's). The reason for the deposits and withdrawals was for the purpose of providing sufficient funds in the accounts so as to ensure that checks did not "bounce".

C.    The transactions complained of by the Government in footnote number 1 ceased in 2002. Therefore, there is no present issue pertaining to these types of transactions.

12.    Defendant is presently lawfully and gainfully employed as an employee of Interlogixx Ventures, Inc. The Defendant's functions as a business consultant. The Defendant's employment does not involve the Defendant soliciting anyone at anytime to make investments of third party funds or capital in any transaction. The Defendant does not oppose a bond modification that reads as follows - "The Defendant is prohibited from personally engaging in any business transaction that involves any form of financing or investment of third party funds or capital and the Defendant is prohibited from soliciting investment of funds or capital from third parties". It is respectfully submitted that the language proposed by the defense is sufficient to safeguard the concerns of the Government and at the same time not being too over broad in its scope to the improper detriment of the Defendant.

13.    The Defendant has extensive ties to the South Florida Community. The Defendant is gainfully employed and mobility is essentially for him to perform his professional and job related duties. The Defendant's wife, Chari Morgenstern, is presently ill

BILL CLAY P.A. II   11440 N. KENDALL DR. • PENTHOUSE 400 • MIAMI, FL 33176 • TELEPHONE (305) 595-0866 • FAX (305) 595-9732

suffering with alcoholism related illnesses and has not driver's license. All of the Morgenstern family's errands, transportation to church, sporting events, children's school, doctor visits, visits to the Defendant's 90 year old father (Harold Morgenstern) who resides locally and is suffering from basil cell carcinoma, would be unnecessarily and unjustifiably prevented, if not severely restricted, by the Government's request for house arrest.

14. Furthermore, the house arrest would work an extreme prejudice to the Defendant at a time when his life is particularly complicated with an upcoming sentencing in an extremely complicated and convoluted case. This situation is compounded by the fact that, through no fault of the Defendant, he has had two previous changes of CJA counsel. Undersigned counsel was recently appointed by Order dated February 4, 2003 to undertake the Defendant's representation in this matter as CJA counsel. It is respectfully submitted that it is unnecessary and unfairly burdensome for the Defendant to be subjected to 24 hour house arrest or any type of house arrest for that matter. The Defendant is not a flight risk and never has been.

WHEREFORE, predicated upon the foregoing, Defendant FRED MORGENSTERN does request this Court to deny the Government's Motion to Reinstate Conditions of Bond Pending Sentencing.

Respectfully submitted,

WILLIAM A. CLAY, ESQUIRE
Florida Bar No: 155102
CJA Counsel for Fred Morgenstern
11440 North Kendall Drive
Penthouse 400
Miami, Florida 33176

8

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on February 14th 2001, a true and correct copy of the foregoing was furnished by fax and mail to:   AUSA BRIAN McCORMICK and AUSA DIANA FERNANDEZ, United States Attorney's Office, 500 Broward Blvd., Suite 700, Fort Lauderdale, Florida 33394; and, BRIAN McCOMB, CJA Counsel for Defendant David Morgenstern, 3458 S.E. Dixie Highway, Stuart, Florida 34997 and the original of the instant Response in Objection to Government's Motion to Reinstate Conditions of Bond Pending Sentencing was filed on this date by courier.

WILLIAM A. CLAY, ESQUIRE

9