UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 00-6309-CR-DIMITROULEAS(s)(s)

UNITED STATES OF AMERICA, )
                           )
        Plaintiff,         )
    v.                     )
                           )
FRED MORGENSTERN           )
                           )
                           )
        Defendant.         )
_____)

### DEFENDANT'S NOTICE OF OBJECTIONS
### TO PRESENTENCE INVESTIGATION REPORT

Comes now the Defendant, **FRED MORGENSTERN**, by and through undersigned counsel, and files his Objections to the Presentence Investigation Report as follows:

### THE OFFENSE CONDUCT

It is noted that the offense conduct was written by the United States, not the probation office. Accordingly, its tone and verbiage reads as if, with every breath, Fred Morgenstern was living the fraud so vastly alleged in the indictment. Therefore, it is virtually impossible to effectively challenge every sentence. After final completion of the sentencing presentation, the Court will hopefully understand Fred Morgenstern is not what the offense conduct conveys in its message. Further, Fred Morgenstern does not shirk from his responsibility and role in the offense.

**Paragraph 13-24; 38-53.** This is the subject of a Motion to Redact from Pre-Sentence Investigation Report. This motion is adopted and incorporated herein.

1

United States vs. Fred Morgenstern
Case 00-6309-Cr-Dimitrouleas

**Paragraph 25.** Defendant objects to the use of the term "nominee" in reference to Jason Crossen. Defendant also objects to the term "paper ownership" with reference to Check Cashing Unlimited. Although the distinctions in these terms may be subtle, it may also be important. Fred Morgenstern does not deny that he had a significant role in Check Cashing Unlimited. Fred Morgenstern does not deny involvement in financial and investment decisions with this entity. However, Jason Crossen, not only was a real person, but was really involved in the business. He was not only the sole stockholder, but was actively involved in the daily business activities of the company.

The subtlety of this starting paragraph will become apparent as the sentencing of Fred Morgenstern evolves. However, the specific objection is that paragraph 25 implies that Fred Morgenstern started in the summer of 1999 with a paper transfer of ownership to enter the fraud when, in fact, at least a year before any of the conduct alleged in this case, Jason Crossen and Fred Morgenstern opened four sites for Check Cashing Unlimited with its own purpose and its own business plan. Remembering that the government wrote the Offense Conduct, paragraph 25 makes it appear that this is the beginning of a criminal conspiracy by Fred Morgenstern starting with a hidden ownership. This is not true. Defendant moves to strike the first sentence of paragraph 25.

The Defendant also moves to strike the second sentence of paragraph with reference to a check kiting scheme. This is outside the scope of any "South Carolina" conduct; references prior criminal conduct that has neither been presented to the Court, nor has the Defendant been charged and convicted and is irrelevant to the sentencing in this matter. Moreover, there is lawful conduct

United States vs. Fred Morgenstern
Case 00-6309-Cr-Dimitrouleas

in the State of Florida for check cashing entities, which conduct can be misconstrued to be check kiting.

The Defendant also moves to strike the third sentence in that it pertains to the RICO conduct of co-defendants that have nothing to with Mr. Morgenstern's plea of guilt in this matter; hence, it is irrelevant and prejudicial. (See Motion to Redact from Pre-Sentence Investigation Report.)

**Paragraph 26-30.** Defendant is submitting a corollary pleading, which will be filed subsequent to these objections, entitled Defendant's Sentencing Memorandum. Requesting the Court's forgiveness, due to the complexity of this case and how the pre-sentence report was prepared, the tone of the reading of these paragraphs simply imply a story version of the indictment rather than a fair and independent depiction of the true facts.

Fred Morgenstern does not deny being involved with the financial aspects emanating from the South Carolina fraud of Virgil Womack. However, the Defendant, Fred Morgenstern, had nothing to with the substantive fraudulent conduct of Womack. Fred Morgenstern was not indicted in the Womack case. Paragraph 26, however, reads that Fred Morgenstern "became involved in an investment fraud scheme".

Does one object to a half truth in a pre-sentence investigation report where the real truth lays inferred within the paragraph, but the verbiage in the paragraph is, not completely accurate. The difficulty here is trying to pound a square peg into a round hole. The truncated format for federal sentencing requires a defendant to object under Rule 32 and the court to make specific findings (or state that it is not considering the allegation or conduct) rather than simply allowing for a sentencing proceeding.

MICHAEL J. ROSEN, P.A.
2400 SOUTH DIXIE HIGHWAY · SUITE 105 · MIAMI, FLORIDA 33133 · TEL. (305) 858-9700 · FACSIMILE (305) 858-7299

Defendant objects to being included within the investment fraud scheme itself which is not true.

The Defendant does recognize, however, his role in the South Carolina fraud was on the financial side of the scheme and had nothing to do with the fraud conduct.

Defendant adopts and incorporates into the objections, Defendant's explanations as set forth in the Sentencing Memorandum with reference to the above paragraphs.

**Paragraph 28.** Similarly, the language of "promot(ing) the ongoing fraud by Womack" implies that the Defendant knowingly began this process aware of Womack's scheme. This is not true. While Womack may have utilized these funds to promote his ongoing fraud, Fred Morgenstern did not. (See Sentencing Memorandum).

**Paragraph 31.** Fred Morgenstern cannot be linked with the financial aspects of this illegal conduct with David Morgenstern. It is inaccurate to say "Fred and David Morgenstern," with reference to anything pertaining to finances in this case. Fred Morgenstern never traveled first class. Fred Morgenstern neither traveled to Europe nor bought jewelry. Fred Morgenstern did take his first vacation in twenty years Colorado in December of 1999. Fred Morgenstern was not involved in an investment fraud in Wisconsin. Fred Morgenstern was unaware of any payments made for the benefit of Fred Morgenstern or any personal expenses of Fred Morgenstern from a Swiss account owned and controlled by David Morgenstern and his wife, Victoria. See also, the corollary **paragraph 152** which more accurately sets forth Fred Morgenstern's financial benefit which was a payment on an American Express card shared by Fred and his father in the amount of $16,785.15 (which was utilized to purchase computer equipment for a bank customer, and of no personal benefit

4

Michael J. Rosen, P.A.
2400 SOUTH DIXIE HIGHWAY · SUITE 105 · MIAMI, FLORIDA 33133 · TEL. (305) 858-9700 · FACSIMILE (305) 858-7299

to Fred Morgenstern). The $16,000.00 amount was repaid by Fred Morgenstern's father in order to satisfy the civil contempt finding in South Carolina against Fred Morgenstern. (See Consent Order attached hereto as Exhibit A). It is noteworthy that the $2.9 million dollar Consent Order was satisfied with a $16,000.00 payment with the express approval of the Receiver and the Department of Justice.

It is essential for this Court to recognize, when considering the proper sentence to impose, that Fred had nothing to do with the "Womack" funds once they left his check cashing store. (See Consent Order, Exhibit A, for Judge Anderson's finding that Fred Morgenstern has no control over the European funds at issue). In fact, Fred never had control over these funds.

**Paragraph 33.** Defendant objects to the last two paragraphs which Defendant believes refers to Mamone and not himself, as Fred Morgenstern did not have a Merrill Lynch account.

**Paragraph 57, 74 and 84.** Defendant objects to the role assessment applying a 4 point level increase as organizer and leader of the money-laundering operation as this assessment is inappropriate for Fred Morgenstern. Fred Morgenstern's role was that of a processor. Fred received South Carolina funds, deposited same and sent funds when he was told to send them. He did not organize or lead anyone. While it may be money laundering, this in and of itself, it is not a basis to find a role increase.

It is incorrect to combine David and Fred Morgenstern; it is done only because they are brothers. Their conduct could not be more different. Whatever David Morgenstern's role was, it certainly was not Fred's role. David was head of the European investment front, Fred was not. David traveled, invested the Womack dollars, Fred did not. Fred was responsible for the cashing

5

United States vs. Fred Morgenstern<br>Case 00-6309-Cr-Dimitrouleas

of the checks, period.

Fred's role is worthy of neither a mitigating nor an aggravating role adjustment.

The Eleventh Circuit recognized in *United States vs. Rodriguez de Varon,* 175 F.3d 930 (11th Cir. 1999)(en banc) that this is a fact-intensive inquiry. Id at 944. First, 'the district court must measure the defendant's role against the relevant conduct for which (he) was held accountable at sentencing.... Second, the district court may also measure the defendant's role against the other participants to the extent that they are discernable, in that relevant conduct. Id. At 945.

It is not Defendant's exact role or status in the criminal activity rather an assessment of Defendant's culpability in the context of all circumstances. *United States vs. Shonubi,* 998 F.2d 84 (2nd Cir. 1993).

**Paragraph 80-83, 87 and 90.** Defendant objects to the guideline of §2S1.1, which is the guideline under §1956. It was the clear intention of all parties (and the Court) for the pleas in this matter to be a violation of §1957 (§2S1.2), not §1956. (This will be elaborated in a future pleading).

**Paragraph 82.** Defendant objects to the base offense level of 20. The proper guideline for a §1956(h) offense, where the object of the conspiracy is a §1957 violation, is the guideline base offense of 17, pursuant to §2S1.2 of the 1999 Sentencing Guidelines. The plea colloquy clearly establishes that all parties, including the government, were in agreement that defendant was pleading to a conspiracy to violate §1957. (See page 24, Change of Plea Transcript, May 21, 2002).

6

MICHAEL J. ROSEN, P.A.
2400 SOUTH DIXIE HIGHWAY · SUITE 105 · MIAMI, FLORIDA 33133 · TEL. (305) 858-9700 · FACSIMILE (305) 858-7299

United States vs. Fred Morgenstern
Case 00-6309-Cr-Dimitrouleas

**Paragraph 83.** Defendant objects to the Specific Offense Characteristic contained in Paragraph 83 calculating the value of funds to be within the range of $20,000,000 to $35,000,000 and attributing a **10 level increase** to Defendant's offense level pursuant to 2S1.(b)(2)(k). The "value" of the funds should be reduced, taking into account the amount of funds already repatriated from Barclays Bank, London, England as referenced in Paragraph 4 of the PSR. The Defendant voluntarily returned $17,769,346.22 in this matter. The loss therefore should be reduced by this amount, making the total loss or "value" a little more than $12,000,000. This "value" amount corresponds to a **9 level increase** pursuant to §2S1.(b)(2)(J).

**Paragraph 89.** Defendant objects to Paragraph 89 in that it fails to give a reduction for Defendant's acceptance of responsibility. Defendant has pleaded guilty to the offense conduct and will be filing a written statement of acceptance of responsibility to the probation office. Furthermore, the basis for not awarding Defendant acceptance of responsibility stemming from Defendant's criminal contempt conviction warrants further examination and evaluation by this Court.

Briefly stated, Defendant was convicted of criminal contempt for his failure to appear in a South Carolina court proceeding. The mitigating circumstances of this situation does not warrant an increase in criminal history. Defendant's non-appearance was due to a misunderstanding and miscommunication with his counsel. At the time defendant was required to appear in court in South Carolina, defendant was on bond in the Southern District of Florida in the instant matter. As such, Defendant was not free to travel without the express permission of the probation office or Court Order. Defendant's South Carolina attorney at the time advised Defendant that his appearance

MICHAEL J. ROSEN, P.A.
2400 SOUTH DIXIE HIGHWAY · SUITE 105 · MIAMI, FLORIDA 33133 · TEL. (305) 858-9700 · FACSIMILE (305) 858-7299

was not necessary in South Carolina as they were expecting the hearing to be continued or postponed at the last minute. Defendant relied on this representation and, accordingly, did not make arrangements to travel to South Carolina.

Upon learning there would be no continuance, Defendant purchased a ticket to travel to the hearing. Defendant did not leave as he understood there would be a violation of his South Florida bond.

Denying Defendant his acceptance of responsibility reduction based on this event is not what the Sentencing Commission had in mind when it drafted the application notes to 3E1.1. Clearly the intent behind the comment to 3E1.1(n.1(b)) is to penalize a defendant who continues to engage in wilful criminal conduct. The factual background behind defendant's criminal contempt conviction evidences defendant's willingness to <u>avoid</u> engaging in further criminal conduct. Defendant meets and satisfies all the other criterial contained in the commentary (n. 1a-h) and therefore should not be denied acceptance of responsibility on this basis.

Further, in addition to satisfying the criteria under subsection §3E1.1(a), Defendant also qualifies for an additional one level reduction under subsection (b)(2) as defendant entered a timely plea of guilty. Accordingly, Defendant should be granted a reduction in his offense level of **3 levels.**

**Paragraphs 87 and 90.**    Defendant objects to the calculation in paragraphs 87 and 90 based on the previously stated objections.

MICHAEL J. ROSEN, P.A.
2400 SOUTH DIXIE HIGHWAY · SUITE 105 · MIAMI, FLORIDA 33133 · TEL. (305) 858-9700 · FACSIMILE (305) 858-7299

United States vs. Fred Morgenstern
Case 00-6309-Cr-Dimitrouleas

## CRIMINAL HISTORY

**Paragraph 94 and 95.** Defendant objects to the addition of 1 point for the criminal contempt conviction outlined in paragraph 94. As set forth in detail in Defendant's objection to paragraph 89 pertaining to Defendant's acceptance of responsibility, the conviction for this offense of criminal contempt was not wilful and is not a true representation of Defendant's criminal history. The addition of this point puts Defendant's criminal history in a Category III, which over represents Defendant's true criminal history.

Pursuant to 4A1.3 "[i]f reliable information indicates that the criminal history category does not adequately reflect the seriousness of the defendant's past criminal conduct or the likelihood that the defendant will commit other crimes, the court may consider imposing a sentence departing from the otherwise applicable guideline range." USSG §4A1.3. The policy statement to section 4A1.3 states there may be cases where a defendant's criminal history category significantly over-represents the seriousness of a defendant's criminal history or the likelihood that the defendant will commit further crimes. In these instances, the court should consider a downward departure from the guidelines. USSG §4A1.3. The guidelines use the example of a defendant with two misdemeanor convictions close to ten years prior to the instant offense and no other evidence of prior criminal behavior in the intervening period as a basis for a downward departure in criminal history.

In the instant case, but for the conviction for criminal contempt, Defendant's previous offense, which was assessed 3 criminal history points, occurred almost thirteen (13) years before the offense conduct in the instant matter. The timing and pattern of the criminal contempt conviction warrants a downward departure as the Defendant's criminal history is over represented

9

MICHAEL J. ROSEN, P.A.
2400 SOUTH DIXIE HIGHWAY · SUITE 105 · MIAMI, FLORIDA 33133 · TEL. (305) 858-9700 · FACSIMILE (305) 858-7299

United States vs. Fred Morgenstern<br>Case 00-6309-Cr-Dimitrouleas

by the addition of the 1 point to his criminal history score.

It is well within the discretion of the District Court to depart downward in Defendant's criminal history category if the Court finds that the defendant's criminal history category is over represented. See <u>U.S. v. Smith</u>, 289 F.3d 696 (11th Cir. 2002); <u>U.S. v. Weaver</u>, 920 F.2d 1570 (11th Cir. 1991)(The district court departure downward and decreased defendant's criminal history score by one increment stating that the prescribed punishment was excessive as a deterrent which is simply a different way of stating that the defendant's criminal history score over-represented the likelihood that he [defendant] would recidivate); <u>U.S. v. Collins</u>, 915 f.2d 618 (11th Cir. 1990)( the district court adequately stated the reason for the downward departure, *i.e.* that the defendant was not likely to commit further crimes in the future; however, the district court did not follow the correct procedure in departing as it failed to consider the possible sentences under the next criminal history category). Accordingly, Defendant respectfully requests a downward departure of his Criminal History category.

**Paragraph 100.** There seems to be a point of contention in this regard. In order to preserve the objection, Defendant objects at this time to paragraph 100 as it relates to Defendant's involvement in the structuring of financial transactions. This, hopefully, can be resolved before sentencing.

**Paragraph 152.** Defendant objects to paragraph 152 in that it states this case is still pending. This case has been concluded and contempt purged with the $16,000.00 payment.

MICHAEL J. ROSEN, P.A.
2400 SOUTH DIXIE HIGHWAY · SUITE 105 · MIAMI, FLORIDA 33133 · TEL. (305) 858-9700 · FACSIMILE (305) 858-7299

United States vs. Fred Morgenstern
Case 00-6309-Cr-Dimitrouleas

Respectfully submitted,
MICHAEL J. ROSEN, ESQ.
Fla. Bar No. 183719
2400 South Dixie Highway, Suite 105
Miami, Florida 33133
(305) 858-9700

_____
Michael J. Rosen

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing was mailed this 28th of March, 2003, to: AUSA, Brian McCormick, and AUSA, Diana Fernandez, United States Attorney's Office 500 E. Broward Blvd. 7th Floor, Ft. Lauderdale, Florida 33394; USPO, Ed Cooley, US Probation Office, 299 E Broward Blvd, Room 409, Ft. Lauderdale, Florida 33301; 33394; Brian McComb, Counsel for Defendant, David Morgenstern, 3458 S.E. Dixie Highway, Stuart, Florida 34997.

_____
MICHAEL J. ROSEN, ESQ.
Fla. Bar No. 183719
2400 South Dixie Highway, Suite 105
Miami, Florida 33133
(305) 858-9700 (telephone)
9305) 858-7299 (facsimile)

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
GREENVILLE DIVISION

FILED
JUL 22 2002
LARRY W. PROPES, CLERK
U.S. DISTRICT COURT

| | |
|---|---|
| United States of America, ) | CRIMINAL NO.: ~~8:00-27~~ |
| v. ) | |
| Virgil Womack, et al. ) | 8.02-cR-714 |
| _____ ) | |
| United States of America ) | CIVIL NO.: ~~6:00-236-13~~ |
| v. Fred Morgenstern ) | |
| Alliance Trust, a.k.a. Alliance T, Inc., ) | |
| a.k.a. AT, Inc., Chemical Trust, Cardinal ) | |
| Trust, a.k.a. Cardinal T, Inc., Carver ) | |
| Trust, a.k.a. Carver T, Inc., Continental ) | |
| Trust, Hampton Trust, Heart-Land Trust, ) | |
| Hersheys Trust, Three Rivers Trust, ) | |
| a.k.a. TRT, Inc., Merrit Pierce Trust, ) | |
| a.k.a. MPT, Inc., United Marketing Trust, ) | |
| a.k.a. UMT, Inc., U.S. Guarantee Corp., ) | **CONSENT ORDER** |
| Gold Coast Check Cashing, Inc., Virgil W. ) | |
| Womack, George H. Williamson, Sr., ) | |
| Charlotte Womack, Clifton Wilkinson, ) | |
| Fred Morgenstern, Lewey L. Cato, III, ) | |
| Alvin A. Tang, and Joseph R. Silvestri, ) | |
| Defendants, ) | |
| Prestige Accounting Services, Inc., ACC Capital ) | |
| Consultants, Inc., The Falcon Trust Company, Ltd., ) | |
| America's Fidelity Assurance Company, Ltd., ) | |
| New Millennium Management, Manufacturers ) | |
| Fidelity and Guaranty Company, Ltd., America's ) | |
| Resource Corp., MICA Securities, Inc., MICA ) | |
| Enterprises, Inc., U.C.B.M. (Bahamas), Ltd., Triple ) | |
| W Builders, Inc., Merrit Advisors Group, Inc., ) | |
| Adbank Companies, Intercontinental Capital ) | |
| Management, Ltd., JRAM, Allan J. Clarke, ) | |
| Americas Fidelity Capital Management, Ltd., ) | Original Document |
| Americas International Bank Corp., Ltd., Standard ) | Located in 8.02-712 |
| Atlantic, Inc., FTS Entities, Ltd., Risk Management ) | |
| Group, Ltd., Bruce Forrester, Nelson Jarnagin, ) | |
| James Morgenstern, David Morgenstern, Victoria ) | |
| Morgenstern, Slattocks Invest, S.A., Bayswater ) | |
| Commercial Inc., and Commercial Holdings, ) | |
| Relief Defendants. ) | |

EXHIBIT A



This matter comes before this Court, on motion of Robert C. Wilson, Jr., attorney for Fred Morgenstern, with the consent of Beattie B. Ashmore, Receiver, and James R. Pavlock, Senior Trial Attorney, Department of Justice, representing the Plaintiff.

The Civil Contempt Order entered against Fred Morgenstern on March 7, 2002 required that Defendant Fred Morgenstern purge his civil contempt by 1) repatriating and disgorging to the Receiver the $2.8 million transferred from Americas International Bank Corporation to the "Slattocks Invest, S.A." account #21444; 2) by disgorging to the court-appointed Receiver $27,975 transferred from said Slattocks account on or about August 23, 2000 in payment of his American Express card bill; and 3) by disgorging to the court-appointed Receiver $16,785 transferred from Americas International Bank Corp., Inc. in payment of Defendant's American Express card bill.

Upon further investigation since the entry of this civil contempt order, the government is satisfied that Defendant Fred Morgenstern no longer has control over the $2.8 million transferred to the "Slattocks Invest, S. A." account and accordingly has determined that is impossible for Fred Morgenstern to purge his contempt in this respect. Further, the government has agreed to accept payment in settlement of items 2 and 3 of the civil contempt order upon payment by Defendant Morgenstern of $6,300.00 and the payment of $1,500.00 per week for seven (7) weeks, thereafter. Further, Fred Morgenstern has entered into a plea agreement in the United States District Court Southern District of Florida, case number 00-6309-CR-Dimiroulcas, in which the defendant agrees to provide full and complete disclosure of all assets over which he has exercised control. The Plea Agreement is incorporated by reference and attached hereto (Exhibit A). Accordingly, it is

2

ORDERED that the said Fred Morgenstern be, and hereby is, released from incarceration upon his payment, to the Receiver in this matter, of the sum of $6,300.00. And it is further

ORDERED that Fred Morgenstern shall pay the sum of $1,500.00 per week for seven (7) weeks thereafter to complete his purging himself of his civil contempt, as held by this Court. And it is further

ORDERED that Fred Morgenstern does hereby release, surrender, and abandon any claim or title or interest otherwise in the monies described above and agrees to forfeiture of said monies. And it is further

ORDERED that, should the said Fred Morgenstern fail to complete the weekly payment schedule, as provided in this Order, he will then promptly surrender himself to the proper authorities for return to an appropriate Federal holding facility, until such time as he completely purges himself of his civil contempt of this Court.

_____
G. ROSS ANDERSON, JR.
UNITED STATES DISTRICT JUDGE

Dated: 7/22, 2002
Anderson, South Carolina

I so move:

_____
Robert C. Wilson, Jr.
Attorney for Fred Morgenstern

We consent:

_____
Beattie B. Ashmore
Receiver

_____
James R. Pavlock    by Kim P. Styler
Senior Trial Attorney    AUSA
United States Department of Justice    D of S.C.

3