UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.   00-6309-CR-DIMITROULEAS(s)(s) ✓
02-60101-CR-DIMITROULEAS

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Plaintiff, | ) |
| v. | ) |
| | ) |
| FRED MORGENSTERN | ) |
| | ) |
| Defendant. | ) |
| | ) |

NIGHT BOX
FILED

APR 16 2003

CLARENCE MADDOX
CLERK, USDC/SDFL/FTL

## OMNIBUS SENTENCING MEMORANDUM
## AND MEMORANDUM OF LAW

### Introduction

This case presents a unique set of circumstances which compel a unique resolution.  Fred

Morgenstern is requesting this Court through his undersigned counsel that this Court take a step

back from the routine view of the many cases it has seen and allow the Defendant to present to the

Court what is respectfully submitted as a case that warrants different treatment.

The Defendant is seeking:

1.      A continuance of the sentence of at least one month;

2.      A 5K2.0 departure downward.

3.      Fairness and mercy in sentencing.

If it is a continuance to allow Fred Morgenstern to present in greater detail his compelling

1

United States vs. Fred Morgenstern
Case Nos.:00-6309-Cr-Dimitrouleas(s)(s)
02-60101-Cr-Dimitrouleas
Omnibus Sentencing Memorandum

case, then justice delayed will be justice served. In the old days, this would be called a sentencing with discretion. In this case, under Sentencing Guideline §5K2.0, this Court has discretion if the Defendant presents to this Court matters that meet the criteria of 5K2.0. The overlay of issues compels the filing of this Sentencing Memorandum in an omnibus fashion.

These matters can be summed up as follows: inadequate and ineffective legal counsel; tremendous psychological issues that factor directly into the conduct in this case; dual jurisdiction prosecutions, leading to failed communication between counsel and client, hence, the failure of guidance to Morgenstern, hence a criminal conviction for contempt; Fred's disproportionate benefit relative to this conduct and most important, the heavy weight of David Morgenstern.

It simply cannot be denied, that Fred Morgenstern has not been treated fairly by the system and unless it is remedied, a sentence of 15 years could be imposed in a situation where a fair and appropriate sentence is far less.

## I. MOTION FOR CONTINUANCE

The following is presented with all due respect to the Court. This Court is well known for its effort to have a current docket. It is also well known that this should never be done to the unfair prejudice of any party.

When counsel undertook this case knowing that a short period of time existed between retention and sentencing, it was done with the intention and the dedication to have this case concluded by April 18th. It was done with the expectation that this Court would not grant any

2

United States vs. Fred Morgenstern
Case Nos.:00-6309-Cr-Dimitrouleas(s)(s)
02-60101-Cr-Dimitrouleas
Omnibus Sentencing Memorandum

continuances. It was done because counsel has practiced law in this courthouse for close to 30 years and felt capable of undertaking this assignment.

Everywhere Fred Morgenstern has gone in this case, and in his life, it has always been David and Fred. If this Court reviews the Presentence Investigation Report it is "David and Fred". **For a first time, Fred needs his own day in court. Fred needs to be separated from his brother. Fred needs to be considered on his own merits.**

There will be things that this Court needs to know about Fred's relationship with David that impacts on Fred's decision-making in this case. Fred is asking for a continuance of his sentencing on a day different than and after that of David's.

Everyone person counsel has spoken with in this case has recognized the *extreme difference* between both personality and conduct of Fred and David. This includes government counsel, defense counsel, government agents and people who associate with both. Counsel does not want to cast any aspersions on David Morgenstern. He needs to have his day in court presented unaffected and untainted by Fred Morgenstern.

Certainly, the court could have David Morgenstern's sentencing first and then Fred's. Hopefully, the Court will see, that for all of the right reasons Fred Morgenstern needs to have his own day in Court.

Grounds for continuance are as follows:

1.      Not because it was intentionally withheld, but because within the short period of time available, Fred Morgenstern met with a psychologist and has disclosed information

3

United States vs. Fred Morgenstern
Case Nos.:00-6309-Cr-Dimitrouleas(s)(s)
02-60101-Cr-Dimitrouleas
Omnibus Sentencing Memorandum

that impact significantly (which is an understatement) on Fred's mental and emotional condition.  However, it is simply not Fred's mental and emotional condition, it is directly Fred's mental and emotional condition relevant to David Morgenstern, his mirror twin brother and co-conspirator.

2.    It is respectfully submitted that evidence can be gathered to establish that Fred, on a psychological basis, blindly trusted his brother, was fearful of his brother, was incapable of saying no to his brother.

3.    The sentencing guidelines recognize that in exceptional cases, the mental and emotional condition, while not ordinarily relevant in determining whether a sentence should be outside the applicable guideline range (§5H1.3), can implicate a §5K2.0 departure

    ("Furthermore, although these factors are not ordinarily relevant to the determination of whether a sentence should be outside the applicable guideline range, they may be relevant to this determination in exceptional cases."). (Introductory commentary of part H - Specific offender characteristics).

4.    Counsel anticipates government's opposition to this continuance.  Indeed, counsel likewise anticipates this Court's hesitancy, concern and doubt.  Yet, if counsel is correct that this deep psychological issue directly affected Fred's conduct in the underlying criminal action, because of David's involvement, then this Court is reaching one of those **exceptional cases** where the court still retains its ability to impose sentence with discretion, justice and mercy, words the undersigned hears

from this Court expressed in every Rule 11 change of plea.

5.    A separate but very significant aspect of this is Fred's wife, Chari.  Historically, she

has had a major alcohol problem.  It has reached the breaking point.  No matter how

it may appear regarding time, it is an irrefutable fact that Mrs. Morgenstern is being

admitted in residence for sixty (60) days.  Allowing Fred Morgenstern to make

appropriate arrangements for his children is a significant issue and a basis for a

continuance (or even a delayed surrender if necessary).


## II. MOTION FOR DOWNWARD DEPARTURE

This Court will be presented with a multitude of grounds for a 5K2.0 departure.  Each of

these grounds stands individually as a basis for the departure.  Collectively, it is respectfully

submitted that they present an overwhelming and compelling basis to depart downward.

### A.    The Law

The instant Motion is being filed pursuant to Section 5K2.0 of the United States Sentencing

Guidelines.  Under this section a Court has discretion and authorization to depart from the applicable

guideline range in extraordinary circumstances or circumstances which take the case outside the

"heartland" of cases intended to be included by the guidelines.  The case presented needs to be

"atypical" or, in other words, one that the Sentencing Commission did not consider and, by not

considering, did not want to preclude from departure relief.  The factual circumstances surrounding

the instant case qualify as an "atypical" case and warrants a finding that this case  falls outside the

United States vs. Fred Morgenstern
Case Nos.:00-6309-Cr-Dimitrouleas(s)(s)
02-60101-Cr-Dimitrouleas
Omnibus Sentencing Memorandum

"heartland".

The Supreme Court has dissected the entire history of the Sentencing Reform Act and the Sentencing Commission's policy statements, commentary and notes pertaining to downward departures.

The outcome of this analysis resulted in four questions which the sentencing court should ask itself when considering a request of downward departure:

3.     What features of this case, potentially, take it outside the Guidelines' "heartland" and make it a special, or unusual case?

4.     Has the Commission forbidden departures based on those features?

5.     If not, has the Commission encouraged departures based on those features?

6.     If not, has the Commission discouraged departures based on those features?

*Koon v. United States,* 518 U.S. 81, 116 S. Ct. 2035, 2044 135 L.Ed2d 392 (1996).

*Koon* held that in those instances where an unmentioned special factor is presented for consideration to the sentencing court by a defendant seeking a downward departure, the sentencing court " ... must, after considering the 'structure and theory of both relevant individual guidelines and the Guidelines taken as a whole,' decide whether it is sufficient to take the case out of the Guideline's heartland." *Koon at 2044.*    The Commission made clear that it "does not intend to limit the kinds of factors, whether or not mentioned anywhere else in the guidelines, that could constitute grounds for departure in an unusual case." *Koon at 2050* (citing to U.S.S.G. ch. I, pt. A, intro. Comment. 4(b)).    It is important to keep in mind that the Guidelines "place essentially no

6

United States vs. Fred Morgenstern
Case Nos.:00-6309-Cr-Dimitrouleas(s)(s)
02-60101-Cr-Dimitrouleas
Omnibus Sentencing Memorandum

limit on the number of potential factors that may warrant a departure. *Koon* at 2050.

### B.    The David and Fred Link[1]
### and §5H1.3, USSG

Life is like an onion;
You peel off one layer at a time
and sometimes you weep.

*Lewis v. Nelson*, 544 F.Supp. 1004 (S.D. Fla. 1982) (Spellman, J.) citing Carl Sandburg, in

Judge Spellman's extraordinary opinion ultimately leading to the freeing one of the Haitian

immigrants from INS detention. If this Court will allow itself to unravel the layers of the onion, the

court may will the truth.

In the 53 years David and Fred have spent together, the two personalities fed off each other,

one dominant to the extreme and the other subservient to the extreme. The abuse imposed by David

on Fred; combined with the factual conduct in this case, (that which led to the criminal charges and

that which occurred behind the scenes), meets the mental and emotional conditions' Specific

Offender Characteristic which the Guidelines recognize as an accepted basis for departure. See 18

U.S.C. §3553(b); *United States v. Smith*, 289 F.3d 696 (11 Cir. 2002); *United States v. Mogel*, 956

F.2d 1555 (11 Cir. 1992).

The guidelines allow for this presentation, and permit this Court to depart downward if the

exceptional case exists. It is respectfully represented that upon hearing the facts, this Court will

---

[1]Fred adopts and incorporates the Motion for Continuance portion of this pleading into
additional grounds for 5K2.0 argument.

7

United States vs. Fred Morgenstern
Case Nos.:00-6309-Cr-Dimitrouleas(s)(s)
02-60101-Cr-Dimitrouleas
Omnibus Sentencing Memorandum

agree that this is the exceptional case. The David and Fred link is the key to a fair sentence in this case and a lawful sentence under the Guidelines. *Koon v. United States, supra.*

It would appear from the outside looking in that this was a coordinated and cohesive relationship. Factually, Fred Morgenstern operated the American Resources Corp., a Florida corporation that received approximately $16 million of the Womack fraud money. This was then transferred to the Americas International Bank Corp., (AIBC), for distribution by David Morgenstern. From AIBC, payments were made to the benefit of both David and Fred Morgenstern. The reason this pleading is filed in an omnibus fashion is because the overlay of facts into issues cannot be segregated into multiple pleadings. Fred operated at David's direction. Fred aided and abetted, and in doing so Fred aided and abetted the Womack fraud. Yet, Fred's benefit for his conduct in this case is so extraordinarily diminimus it raises questions as to what his true role and purpose was.

As we are in a sentencing procedure rather than litigation, certain facts that support the government's allegations are not contested. It is perhaps the perspective and the point of view that takes the case outside the heartland of the sentencing guidelines.

The facts support the following scenario. Virgil Womack created a scheme to defraud independent of Fred Morgenstern. David Morgenstern invested those funds overseas in a fashion that only he was involved in. Fred Morgenstern, because of his check cashing stores, was placed in a position of receiving Womack's funds and disbursing funds to David and other places.

The inside picture is as follows. David Morgenstern never confided in Fred Morgenstern

8

about any of his activities and treated Fred Morgenstern in a disparaging and dominating fashion. Virgil Womack had little relationship with Fred Morgenstern except as the person processing the checks.

Essentially, Fred spent approximately $20,000.00 on computer equipment from his credit card that was placed in the Bahamas Bank and took his family on a trip to Vail, Colorado. It was the first vacation Fred had taken with his family in 20 years. While not justifying this conduct, there is undeniably a tenor of mitigation involved here.

Fred Morgenstern's benefit from this crime was approximately **.0001 ( one ten-thousandth of one percent)** of the amount of the fraud over which he was involved. Fred spent approximately $30,000.00 of his "Womack" funds on a family vacation, his first family vacation in 20 years. Fred did **not** spend $100,000.00 at Mayors Jewelers; $9,500.00 at a London store, $1,300.00 for furniture in London, $76,500.00 on another American Express charge. The government takes issue with counsel's expression that Fred was a " processor of checks" in this case. Concededly, Fred's role was greater that a clerk processing checks. Yet, Fred's conduct **did not include** creating, operating or being involved with the incredible fraud that generated $70 million dollars; all of the meetings, negotiations, high life style that David created and engaged in Europe or reaping virtually any benefit from this fraud.

Fred did take funds for monthly living to which he was entitled for check cashing services. However, as it turns out, these were investor funds and not returns on investments. This was wrong.

The point is Fred's conduct, in relation to the conduct of others, simply was not more than

9

United States vs. Fred Morgenstern
Case Nos.:00-6309-Cr-Dimitrouleas(s)(s)
02-60101-Cr-Dimitrouleas
Omnibus Sentencing Memorandum

receiving funds and disbursing funds.  Fred had no decision making capacity, no strategy development; nothing, except oversight of his check cashing stores.

It is appropriate to assess Fred's role in relation to the conduct of others.  See *United States vs. Rodriguez de Varon*, 175 F.3d 930 (11th Cir. 1999) (en banc); cert.denied, *Rodriguez De Varon, v. United States*, 528 U.S. 976, (1999).


Fred Morgenstern has perpetually been caught in David Morgenstern's tailwind.  It has happened in this case and throughout Fred's life.[2]  We are seeking this Court to draw the distinction between the two for it is significant, both in terms of criminal conduct and in terms of causation for criminal conduct.

David has always viewed Fred as hired help, has never trusted him with information nor never treated him as an equal.  The Court's review of the financial benefits of the parties is the best proof of this fact.

David is in fact, a fierce and intimidating individual and Fred acts in an absolutely submissive capacity to that conduct. David lives in a grandiose world, Fred lives within a little world, a world in which he has created for himself.   Again, that is exhibited by the conduct in this case.  While David was out jaunting throughout Europe, meeting with "bigwigs" and coming forth with investment ideas, Fred's little world consisted of opening check cashing stores and monitoring the flow of funds in and out to make sure all regulatory aspects were properly done.

---

[2]Even the 1976 conviction of Fred was David driven by this.  David convinced Fred to take the plea and David would pay the fine.

MICHAEL J. ROSEN, P.A.
2400 SOUTH DIXIE HIGHWAY  ·  SUITE 105  ·  MIAMI, FLORIDA 33133  ·  TEL. (305) 858-9700  ·  FACSIMILE (305) 858-7299

United States vs. Fred Morgenstern
Case Nos.:00-6309-Cr-Dimitrouleas(s)(s)
02-60101-Cr-Dimitrouleas
Omnibus Sentencing Memorandum

Certainly, this does not minimize his conduct, however, it all adds up.

Fred's conduct in this case is consistent with the dominated twin; and is consistent with a sentence that is within the Womack range and the range of all other defendants in this case.

The Eleventh Circuit has put its imprimatur on §5H1.1-6 as authorizing downward departure in the extraordinary case.

## C.    Disproportionate Conduct vs. Dollars

There is a body of law which recognizes that where the dollar amount of the wrongdoing is so out of proportion to the defendant's conduct as to skew his punishment beyond the realm of propriety, then a downward departure is appropriate. As the Eleventh Circuit recognized early on,

> Sentencing under the guidelines is not...an exact science. Justice cannot be meted out according to mathematic formulas. The universe of potential factors that might affect the seriousness of the given offense is too broad to be refined to a mechanistic approach. The sentencing guidelines are not intended to cover all contingencies or rigidly bind district judges. The guidelines do not impose the sentence, they provide a framework for the district court to provide a sentence. (Citation omitted) *United States vs. Crawford*, 883 F.2d 963, 966 (11th Cir. 1989).

In approving a departure, Crawford[3] relied heavily on the Commission's policy statements:

> The Commission has adopted this departure policy for two basic reasons. First, is the difficulty of foreseeing and capturing a single set of guidelines that encompasses the vast range of human conduct relevant to a sentencing decision....
> Second, the Commission believes that despite the court's

---

[3]While Crawford was an upward departure, the same policies apply to unguided departures, whether upward or downward.

MICHAEL J. ROSEN, P.A.
2400 SOUTH DIXIE HIGHWAY  ·  SUITE 105  ·  MIAMI, FLORIDA 33133  ·  TEL. (305) 858-9700  ·  FACSIMILE (305) 858-7299

United States vs. Fred Morgenstern
Case Nos.:00-6309-Cr-Dimitrouleas(s)(s)
02-60101-Cr-Dimitrouleas
Omnibus Sentencing Memorandum

legal freedom to depart from the guidelines, they will not do so very
often.

This principle has been applied in both drug cases, *United States vs. Dorvil*, 784 F.Supp 849

(S.D. Fla. 1991) (Atkins, J.); and in money-laundering cases, *United States vs, Restrepo*, 936 F.2d

661 (2nd Cir. 1991), where offloading boxes of cash proving to be proceeds of drug trafficking

created a situation where "an offense level has been extraordinarily magnified by a circumstance

that bears little relation to the defendant's role in the offense." *Id* at 667.    Significantly, Fred

Morgenstern's role, while not unloading a box of drug money, is similar to those whose wrongful

conduct pales in relation to the full scope of criminal activity before the Court.

All of the confluences of Fred Morgenstern's life with David, David's involvement with

Virgil Womack, the short duration of Fred Morgenstern's involvement, in this case, how Fred

Morgenstern entered this conspiracy all run together to take this particular case outside the heartland

of the guidelines. Fred Morgenstern joined this conspiracy in August, 1999, and was finished by

December of 1999. Fred was running his own check cashing stores, having no involvement or

relationship with David Morgenstern or Virgil Womack. David called Fred and said that he, David,

was in trouble and needed Fred's help ("who can say no to David Morgenstern"). David  then

introduced Fred to the Virgil Womack group, who learned of Fred's check cashing stores.[4] Without

---

[4]The government has indicated that Fred already had an ongoing relationship with
Mamone and his affairs.  Even if this is so, it as not the driving force behind the Womack

MICHAEL J. ROSEN, P.A.
2400 SOUTH DIXIE HIGHWAY  ·  SUITE 105  ·  MIAMI, FLORIDA 33133  ·  TEL. (305) 858-9700  ·  FACSIMILE (305) 858-7299

initially disclosing to Fred the truth behind his conduct, and indeed telling Fred the same lies he told

investors, Womack and David got Fred involved.  As acknowledged in Fred's Acceptance of

Responsibility statement, it became apparent over time that this situation was not and could not be

a lawful one. Undeniably, this case concluded because of the government's intervention. However,

it was not until some time close to this intervention that Fred Morgenstern became aware that

statements made to him by Womack were turning out to be untrue. Fred Morgenstern was given the

same false statements as the investors. Fred Morgenstern made every reasonable effort to verify the

bona fides of Womack.  Womack was a Christian preacher (Fred being a religious person, prayed

with Womack on the telephone).  Womack had over 100 insurance salesmen selling a product that

had every conceivable appearance of validity. How else can it be explained that Womack generated

$70 million in fraudulent investor funds in 6 months.

Fred's role of processing funds became a focus of his life because of the amount of money

involved.  Fred's concern was the accuracy and propriety of all regulatory paperwork (having just

finished a successful CTR/8300 audit from his checking cashing stores).  Fred had great faith and

belief in his brother's role and conduct.  In other words, while there came a point in time very close

to the time of the government's intervention and **only 120 days or so into Fred's involvement in**

**this case,** that Fred came to the conclusion that something was seriously amiss.  The shortness of

time, the lack of Fred's knowledge until late, the limited scope of his involvement, the reliance upon

his brother all add up to a sentence that is outside the heartland of the Guidelines.

---

scheme or related to how Fred got involved with Womack.

13

United States vs. Fred Morgenstern
Case Nos.:00-6309-Cr-Dimitrouleas(s)(s)
02-60101-Cr-Dimitrouleas
Omnibus Sentencing Memorandum

### D.  The Plea to the Information - Ineffective Assistance of Counsel

Ineffective assistance of counsel, leading to the guilty plea to the Information, has resulted in a money laundering base offense level of 20 rather than 17.  The result is almost 2 years of additional incarceration simply because NO TIME AND ATTENTION was given to the sentencing guidelines.

Section 1952 has a 5 year cap, which was everyone's focus (as an agreement of between a 10 and 20 year maximum exposure).  Section 1952 requires underlying criminal activity.  Somehow a violation of §1956 rather than of §1957 was chosen.  Yet the Court must recall that this one substantive wire transfer was a part of the conspiracy pled to by the Defendant - in violation of §1957.  For all the effort that went into the plea negotiation that resulted in a plea to the Indictment for a violation of §1956(h) - of a §1957 violation - no effort was made concerning the guideline effect of a plea to the underlying criminal act of the Information being a violation of §1956.

This failure of counsel (William Norris) to review the guidelines and its extreme prejudicial impact on Fred Morgenstern, is sought to be corrected through a 3 point base offense level downward departure under §5K2.0.

Mr. Norris, Mr. Morgenstern's counsel at the time, had the Information thrust upon him at the last minute, which in large measure, had been negotiated between David Morgenstern, his counsel, Scott Saken, and the government.  Fred Morgenstern was still incarcerated because of the contempt citation in South Carolina.  There was virtually no communication between Norris and Fred from the February 1st arrest of Fred Morgenstern (for failure to appear in South Carolina, infra),

14

until his plea to this Court on May 21, 2002. Fred had been up most of the night the night before.

Virtually no contact existed between Norris and Fred, in particular, as to the Information plea. No

one paid attention to the guidelines that came with the Information. It was the expectation of Fred

Morgenstern that the plea to the Information was the same guidelines as the Indictment. Failure of

counsel to explain the impact of this, (and counsel's failure to review the Sentencing Guideline), the

forced nature under which these negotiations took place, (the Court's statement that they could plea

today or go to trial tomorrow) the last minute nature of this[5] all combine to place the defendant in

a completely different base offense level than what it should have been. See paragraph 81 and 82

of the Presentence Investigation Report. Correction of this would reduce the base offense level from

level 20 to level 17. While the Court does discuss that §1956 as the underlying conduct in the plea

colloquy, Fred Morgenstern would not be in a position to understand the impact of the sentencing

guidelines on this plea. Bill Norris should have, but did not. This is a basis under §5K2.0 for a 3

level departure.


### Return of Funds

Fred and David Morgenstern are responsible for the return to the receiver in the District of

North Carolina of approximately $17 million from David Morgenstern's overseas account, Falcon

Trust at Barclay's Bank early in 2000. The government disputes that the defendant should receive

---

[5]See Fred Morgenstern's statement at the January 31, 2003 status conference: "I feel that
even the fact that I was given 15 minutes to plea is ... was kind of aggressive considering that... I
was incarcerated, and that everyone else get a continuance."

15

United States vs. Fred Morgenstern
Case Nos.:00-6309-Cr-Dimitrouleas(s)(s)
02-60101-Cr-Dimitrouleas
Omnibus Sentencing Memorandum

any form of credit for this because it occurred after Womack was arrested in North Carolina and search warrants issued in this matter. There are numerous forms of appropriate credit the defendant could receive in this regard. Under §5K2.0, the defendant's voluntary cooperation before entry of the plea to repatriate funds to minimize the loss could be considered mitigating conduct of a kind or to a degree not adequately taken into consideration by the sentencing commission. This voluntary action by the defendant in conjunction with conduct in all the other matters set forth in this case, the return of such a significant amount of funds is a basis for a downward departure.

Mr. Morgenstern recognizes that the law on this subject pertaining to loss calculation does not allow for reduction of the loss amount when funds are returned after the offense has been detected. However, Mr. Morgenstern respectfully submits that the cooperation he provided in the voluntary return of the funds, while done after the search warrants were executed in South Carolina, is not "too late" for consideration by this Court in evaluating defendant's conduct and whether such conduct is indicative of Mr. Morgenstern's willingness to cooperate and accept responsibility for his conduct.

### Criminal Contempt[6]

Mr. Morgenstern does not today seek to defend his failure to appear before Judge Anderson. What this issue boils down to is **not** whether Mr. Morgenstern committed criminal contempt but whether the result of that, which moves him from a category II to a category III, over-represents the Defendant's criminal history. The Defendant had 3 criminal history points which was a category

---

[6]This is being presented individually under USSG §4A1.3 and in conjunction with §5K2.0 due to the attorney advice which led to Defendant's non-action.

16

II. The contempt moves Mr. Morgenstern to 4 points with a category III. The consequence under

the current sentencing computation in the Presentence Investigation Report causes the Defendant

to have exposure to **2 years of additional incarceration.**

Mr. Morgenstern was found in criminal contempt for failure to appear. There are

extraordinary mitigating factors that lead to the conclusion that this failure to appear over-represents

Fred's criminal history and should not be the cause of a change of criminal history levels.

Mr. Morgenstern's efforts to go to South Carolina included going to the airport to catch the

last flight, yet was given instructions from John Howes, his initial attorney, at the airport, that it

would be a violation of his current bond to travel without court order; Fred's reliance upon the

representations of his South Carolina attorney that the hearing was going to be postponed due to

David's illness and the last minute announcement of no continuance. Fred's reliance upon Bill

Norris to get the matter resolved, but Mr. Norris did not do so. There is certainly shared

responsibility in Mr. Norris' not taking appropriate steps and Mr. Morgenstern's inappropriate

reliance upon the anticipation of a continuance.

Pursuant to §4A1.3 "[i]f reliable information indicates that the criminal history category

does not adequately reflect the seriousness of the defendant's past criminal conduct or the likelihood

that the defendant will commit other crimes, the court may consider imposing a sentence departing

from the otherwise applicable guideline range." U.S.S.G. section 4A1.3. The policy statement to

section 4A1.3 states there may be cases where a defendant's criminal history category significantly

over-represents the seriousness of a defendant's criminal history or the likelihood that the defendant

will commit further crimes.   In these instances, the court should consider a downward departure from the guidelines.   The guidelines use the example of a defendant with two misdemeanor convictions close to ten years prior to the instant offense and no other evidence of prior criminal behavior in the intervening period as a basis for a downward departure in criminal history.

In the instant case, but for the conviction for criminal contempt, Defendant's previous offense, which was assessed 3 criminal history points, occurred almost thirteen (13) years before the offense conduct in the instant matter.     The timing and pattern of the criminal contempt conviction warrants a downward departure as the Defendant's criminal history is over-represented by the addition of the 1 point to his criminal history score.

It is well within the discretion of the District Court to depart downward in Defendant's criminal history category if the Court finds that the defendant's criminal history category is over-represented.  See U.S. v. Smith, 289 F.3d 696 (11th Cir. 2002); U.S. v. Weaver, 920 F.2d 1570 (11th Cir. 1991)(The district court departure downward and decreased defendant's criminal history score by one increment stating that the prescribed punishment was excessive as a deterrent which is simply a different way of stating that the defendant's criminal history score over-represented the likelihood that he [defendant] would recidivate); U.S. v. Collins, 915 f.2d 618 (11th Cir. 1990)( the district court adequately stated the reason for the downward departure, *i.e.* that the defendant was not likely to commit further crimes in the future; however, the district court did not follow the correct procedure in departing as it failed to consider the possible sentences under the next criminal history category).

United States vs. Fred Morgenstern
Case Nos.:00-6309-Cr-Dimitrouleas(s)(s)
02-60101-Cr-Dimitrouleas
Omnibus Sentencing Memorandum

Further, the probation officer's response to Defendant's Objections to the Presentence Investigation Report is completely incorrect. Every point raised by the probation officer has already been taken into consideration by the guidelines. The only factor that causes the Defendant to go to a level III is the contempt citation. The remainder of all other matters raised by probation are resolved by the guidelines.

A two year punishment for not appearing, especially under the circumstances of conflicting and inappropriate advice of counsel, cannot provide a better example of an inappropriate enhancing of one's criminal history - simply because the numbers say so.

## DISPARATE SENTENCES

Should the Court find a 5K2.0 departure basis, it is then appropriate to impose a sentence within the Sentencing Guidelines in relation to those other sentences imposed in this matter. It is incredible that the longest sentence, to the person most involved is 9 years, (notwithstanding his substantial assistance reduction) when all other sentences are less than half or under half  (See Exhibit 1) - Fred Morgenstern does not warrant a 15 year sentence.

Had Fred Morgenstern been involved on his own, independent or unassociated with his brother, the likely scenario would have been a guilty plea to Count 14, cooperation with the government and a sentence in keeping with the others involved to a lesser degree in this offense. To repeat, none of this is to minimize Fred's conduct; it is, however, to recognize Fred's conduct. Because of David, Fred lost the opportunity.  While in South Carolina, Fred was working with the

19

United States vs. Fred Morgenstern
Case Nos.:00-6309-Cr-Dimitrouleas(s)(s)
02-60101-Cr-Dimitrouleas
Omnibus Sentencing Memorandum

authorities. David's refusal to cooperate was the cause of the case being returned to South Carolina.

It has been counsel's perceived role and responsibility to make a first effort in this and perhaps in reality a first effort in Fred's life, to begin the separation process of the two.

The Court is requested to delve into the factual conduct of Fred, place it in perspective of the factual conduct of the other Defendants and sentence Fred accordingly.

As seen by the Defendant, his factual conduct was processing the checks that came from a fraud and transferring those funds to those that invested the money. While certainly criminal in its nature, under §5K2.0 the appropriate sentence must be tempered to the appropriate relationship of the other sentences.[7] Sentencing of defendants by their conduct in relation to other defendants' conduct and sentence is a fundamental part of the sentencing process.

As can be seen from Exhibit 1, the only significant sentence was that of Mamone who acted in a role of an overseer of significant forms of criminal conduct and was directly associated with organized crime. Of all the individuals that pled to the racketeering count, the only other sentence of any significance is that of Buccina and Spitaleri each of whom received a sentence of 4 years, 8 months. These individuals were significant players in the underlying criminal conduct of fraud (see paragraphs 16 through 24). According to the Presentence Investigation Report, the foreign currency investment fraud totaled approximately $4 million. Their sentence of 4 years, 8 months, is strikingly similar to the sentence received by Womack, who was the head of the $70 million fraud activity in South Carolina.

---

[7]Defendant is not seeking a downward departure based on disparate sentences.

20

All other Defendants pleading to a racketeering count received a sentence of 15 months or less, including three Defendants who received probation.

The gambling conduct, including supervisors and managers, likewise received probation although the probation officer had recommended a four point role increase due to the supervisory role.

The money laundering operation for the gambling proceeds headed by Chiusana, received a 1 year, 6 month sentence. Under Count 14, the Count pled to by Fred Morgenstern, Weiss, who was involved in numerous check cashing entities, received a sentence of probation.

The final justification which this Court cannot discount and, in fact, must take into consideration, is the sentence imposed upon the head of the fraud in South Carolina, Virgil Womack - **5 years** .

As will be seen in the conclusion, Fred Morgenstern's guidelines sentence easily fits into this range.

## CONCLUSION

Under the downward departure of §5K2.0, the amount of money involved in the financial transaction was extraordinarily large; the Defendant had no involvement in the generation of these funds; the Defendant's conduct was limited to processing checks received and disbursing funds; the Defendant had no involvement or control in the investment side of the case; the relationship between the Defendant and the amount of funds involved caused the guidelines to overstate the seriousness

21

of the offense in relation to the conduct of the Defendant; the Defendant's personal financial gain

was **1/0001%** of the funds that passed through his hands from the fraudulently obtained money  (in

other words, Fred did not benefit in any meaningful way from the crimes committed in this case);

David had all control and Fred had no control over all invested funds; (it is noteworthy in support

of this that the authorities in South Carolina chose not to charge Fred in the civil fraud aspect of the

Womack), and David possessed unique control over Fred.

For the following reasons, the Defendant requests this Court to downward depart pursuant

to §5K2.0:

1.      Defendant's lack of participation;

2.      Defendant's lack of benefit;

3.      Both of the above in relation to the disproportionate amount of funds involved in

        Womack's fraud;

4.      Over representation of Defendant's criminal history;

5.      Lack of control by Defendant;

6.      Psychological relationship with brother;

7.      Return of funds.

8.      Inefficient assistance of counsel.

Fred Morgenstern has accepted responsibility for his conduct in this case (**minus 3**).

Under §5K2.0, the Court will have numerous sentencing guideline formats from which to

choose, all of which have a basis within the guideline structure and are supported by the facts.

22

**United States vs. Fred Morgenstern**
**Case Nos.:00-6309-Cr-Dimitrouleas(s)(s)**
**02-60101-Cr-Dimitrouleas**
**Omnibus Sentencing Memorandum**

| | | | |
|---|---|---|---|
| Base Offense Level | 17 | 20 | |
| Specific Offense Characteristic | 0 to 5 | 0 to 5 | (Not 10) |
| Adjustment for Role | 0 to 4 | 0 to 4 | |
| Acceptance of Responsibility | -3 | -3 | |
| Sentencing Guideline Range | 14-23 | 17 to 26 | |
| Criminal History II | 18-24 to 51-63 | 27-33 to 70-87 | |
| Criminal History III | 21-27 to 57 to 71 | 30-37 to 78-97 | |

Eighteen months on the low end; ninety seven months on the high end; mean is 57.5 months. This is within the same range as Womack's sentence; underneath Mamone, more than the remaining Defendants and all based upon the recognition that Mr. Morgenstern's role, responsibility and benefit are punishable, but within bounds of fairness, justice and mercy.

Respectfully submitted,

MICHAEL J. ROSEN, ESQ.
Fla. Bar No. 183719
2400 South Dixie Highway, Suite 105
Miami, Florida 33133
(305) 858-9700 (telephone)
9305) 858-7299(facsimile)

MICHAEL J. ROSEN, ESQ.

23

United States vs. Fred Morgenstern
Case Nos.:00-6309-Cr-Dimitrouleas(s)(s)
02-60101-Cr-Dimitrouleas
Omnibus Sentencing Memorandum

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing was faxed and mailed this _16th_ of April, 2003, to: AUSA, Brian McCormick and AUSA, Diana Fernandez, United States Attorney's Office500 E. Broward Blvd. 7th Floor, Ft. Lauderdale, Florida 33394; Brian McComb, Counsel for Defendant, David Morgenstern, 3458 S.E. Dixie Highway, Stuart, Florida 34997;  Ed Cooley, Probation Officer, US Probation Office, 299 E Broward Blvd, Room 409, Ft. Lauderdale, Florida  33301.

MICHAEL J. ROSEN, ESQ.
Fla. Bar No. 183719
2400 South Dixie Highway, Suite 105
Miami, Florida 33133
(305) 858-9700 (telephone)
9305) 858-7299(facsimile)

24

## DISPARATE SENTENCES

## COUNT I (RICO) SENTENCES

| MAMONE | Primary Racketeering Defendant - Count I; RICO count - involved in; extortion, money laundering, obstruction of justice, gambling, bank, mail and wire fraud, stolen goods | 9 years, 6 months (with cooperation) |
|---|---|---|
| BUCCINA | RICO | 4 years, 8 months |
| SPITALERI | money laundering | 4 years, 8 months |
| BELL | laundered South Carolina funds;extortionate collection | 2 years, 5 months |
| CARATINNI | RICO | 15 months |
| O'SULLIVAN | distribution; stolen property | 11 months |
| BELLITTO | manager; illegal gambling | 5 months |
| KLINGER | gambler | probation |
| PRESTON | laundered South Carolina funds | probation |
| D. RUSSO | money laundering | probation |

## COUNT 2 - (GAMBLING/SENTENCES)

| BASS | gambling supervisor | probation* |
|---|---|---|
| BARUCH | sports battery manager | probation* |

\* Like Fred Morgenstern, when the probation office has recommended a 4 point role increase, yet the sentences have been probation

## COUNT 6 - (MONEY LAUNDERING REGARDING GAMBLING)

| CHIUSANA | owner, check cashing store | 1 year, 6 months |
|---|---|---|

## COUNT 14

| WEISS | transported checks | probation |
|---|---|---|



EXHIBIT
1